## No. 463.

### MOLLIE E. LIVINGSTON v. D. C. MORGAN.

The evidence in this case shows that the plantation which is the object of this suit was purchased in his name, for the benefit of plaintiff, by defendant, who was the agent and attorney at law of plaintiff's mother and tutrix, then absent from the State, and that he expected the plaintiff to have sufficient funds out of the succession of her grandfather to pay the note given by him for the price at the maturity thereof.

The question is: Having failed to collect for the minor funds sufficient to pay said note at maturity, was defendant justified in refusing to transfer the title to plaintiff, when she returned to the State, was emancipated by the court, and tendered to him the note which he had executed for the land, and $500, the cash he had paid on that note, with interest on said payment?

Held—That, under such circumstances, he was not justified in refusing to transfer the title to the plaintiff.

Whether the defendant had, or had not, special authority from the court to buy the land for the minor is immaterial. He did buy for her, he agreed to convey it to her when necessary, and this proposition had not been withdrawn when she accepted it and made the tender.

As the defendant has enjoyed the use of this land for a long time, he is not entitled to interest on the amount of the price paid by him, nor is plaintiff bound to refund the amount of the taxes paid by defendant.

The court a qua erred in not allowing the reconventional demand of the defendant for professional services and for money advanced to the natural tutrix of plaintiff for her benefit.

APPEAL from the Fourteenth Judicial District Court, parish of Morehouse. *Ray, J. Newton & Hall*, for plaintiff and appellant. *D. C. Morgan*, in *propria persona*, appellee.

WYLY, J. The plaintiff, an emancipated minor and sole heir of R. D. Livingston, sues the defendant to compel him to transfer to her a certain plantation which he bought at the succession sale of her father on the second December, 1867, on twelve months' credit for $1551, on the ground that said Morgan was the general agent and attorney at law of her mother, her natural tutrix, then absent from the State, and that he bought said land for the benefit of plaintiff, taking the title in his own name with the understanding that he would transfer it to plaintiff when necessary, she making good to him the price given for the land.

Mollie E. Livingston v. Morgan.

The court gave judgment rejecting plaintiff's demand and she has appealed. It will be necessary to examine the evidence.

G. M. Croxtan testifies: " I am administrator of the estate of R. D. Livingston, deceased, and Mrs. S. C. Livingston is coadministrator. I applied for and obtained an order for the sale of the land belonging to the estate of R. D. Livingston, deceased. D. C. Morgan became the purchaser of the land at the sale, and it was my understanding that it was for the benefit of Mollie E. Livingston. I understood so from Captain Morgan. I told parties that it was to be bought for Mollie E. Livingston. That was the understanding between me and Captain Morgan. That is, if the land did not sell for enough to pay the debts; if it did, he was to let it go. The debts were between $2500 and $3000. I have been on the place frequently; $500 would be fair average rent for the place; it is good gum land, and a fair average yield is about a bale of cotton and twenty-five or thirty bushels of corn per acre."

D. C. Morgan, the defendant, testifies: "That in the month of March, 1866, I agreed to act as agent for S. C. Livingston, tutrix for the minor child Mollie E. Livingston, during their absence to the State of Alabama. I went with them to the city of New Orleans, and my last instructions from her was to avoid the sale of the land belonging to the succession of her husband, R. D. Livingston, the land here in controversy. In 1867 the creditors of the succession of R. D. Livingston became clamorous for their money, and the land being the only property belonging to the succession the administrator was forced to get an order for its sale, and the property was advertised for sale. These facts were communicated by me to the tutrix by letter. I addressed, two or three times, letters containing the facts to her in Alabama. I stated I would buy the land if it did not sell for cash and if sold on a credit; and if her ward, Mollie E. Livingston, had funds to pay for the same at the time of the maturity of the obligation, and if she would take the necessary steps to take the title, that I would make a transfer of the title to her. This proposition I made once or twice before the sale and on two or three occasions subsequent, and once a short time previous to the maturity of the obligation for the purchase price. I informed the tutrix that the note would soon mature and if she wanted to avail herself of my proposition she must be ready to meet it; that if I had the debt to pay I would certainly want to retain the title to the land. These propositions were all made through the mail as above stated. I think I received a reply to some of those letters. I received no instructions to pay the note, for the very reason there were no funds available for the same that I knew of. I received no instructions to take any legal steps to transfer said title, by advice of a family meeting or otherwise. The purchase, on my part, of the

land in controversy and the proposition to transfer it to the minor, was not as agent of the minor, but as a friend of the minor. I had no authority to act as agent to make said purchase. That at the time of said purchase, nor at the time of the maturity of the obligation of the purchase price, nor before nor since, has the plaintiff ever had in my hands one dollar belonging to her or the tutorship. At the close of the year 1869, or the first of 1870, I was indebted for the rent of land to the succession of Aaron Livingston something over three hundred dollars, which, by an agreement of the administrator of the estate, I held and retained in my hands, for the benefit of the tutorship; but as the tutorship owed me then a large amount of money in excess of these rents I considered this amount compensated," etc.

On cross-examination this witness states: "I expected to have funds in my hands from her grandfather's succession, sufficient to pay the note given for the place in controversy. I have never paid all the note given for the land; only paid in cash the amount indorsed on the back of it ($500)."

From the foregoing it appears that the defendant bought the land for the benefit of the plaintiff, expecting to collect funds as the attorney of plaintiff's tutrix from the succession of her grandfather, "sufficient to pay the note given for the place in controversy," he having all the business of the tutorship in his hands. And this conclusion is confirmed by the following written admissions of the defendant, which are in the record :

"Defendant admits that on or about the second day of December, A. D. 1867, he wrote a letter to the plaintiff, she being at the time in the State of Alabama, in which he informed her that the land in controversy in this suit, and which then belonged to the estate of her father, R. D. Livingston, deceased, had been sold on that day (second December, 1867), on a credit of twelve months for fifteen hundred and fifty-one dollars, and that he would take the title in his own name and can transfer the same to her (plaintiff) when necessary.

"D. C. MORGAN."

The letter, of which the above admissions contain the substance, written on the day of the sale, addressed to the plaintiff, then a minor child at school in the State of Alabama, taken in connection with the testimony of Croxton, the administrator who procured the order of sale, and also the statement of Morgan, the defendant, on cross-examination, show beyond doubt that the land was purchased by Morgan for the benefit of plaintiff. He expected the plaintiff to have sufficient funds out of the succession of her grandfather to pay the note given by him for the price at the maturity thereof.

Now the question is, having failed to collect for the minor funds suf-

ficient to pay the note at maturity, was Morgan justified in refusing to transfer the title to the plaintiff in September, 1870, when she returned from Alabama, was emancipated by the court, and tendered to him the note which he had executed for the land and $500, the cash he had paid on that note, with $60, the interest on said payment? We are of the opinion that he was not justified under the circumstances in refusing to transfer the title to the plaintiff. In the position which the defendant occupied towards the plaintiff and her mother, the law exacted from him the utmost good faith. He had been put in charge of all their business, and they were absent from the State. In his letter to the minor on the day of the sale, according to his written admissions in the record, he informed her that her father's place had that day been sold on a credit of twelve months for $1551; " that he had taken the title in his own name and could transfer the same to her when necessary." In this letter there was no condition stipulated upon the happening of which he designed keeping the land. He acknowledged that the purchase was for the plaintiff, and virtually promised to convey it to her when necessary, that is when required.

Whether he had special authority from the court to buy the land for the minor or not is immaterial. He did buy for her and agreed to convey it to her when necessary. Until the minor was emancipated in 1870, she could not, independently of her mother, have availed herself of the proposition made by the defendant. It had not been withdrawn when she accepted it and made the tender. Up to that time defendant seems to have had charge of all her business. He has only paid five hundred dollars on the price. If the creditors were clamorous for their money, as he says, and therefore forced the sale of the land upon him, the attorney of the plaintiff and her mother, they certainly have not displayed much zeal in collecting from him the price; for he still holds two-thirds of the price, and has enjoyed the use of the plantation since December, 1867, and the value of the rent is proved to be $500 per annum. If the defendant acted as a friend, as he says, in buying in the property for the plaintiff, like a friend and faithful attorney he should have cheerfully transferred it to her when tendered the price, because he had then enjoyed the use of the property for several years, the rent of which up to that time was doubtless worth as much as the price at which the property had been adjudicated to him. The fact that the defendant was able to buy in that valuable plantation at the paltry sum of $1551, and that he has been permitted for so many years to retain in his hands the greater part of the price, in the midst of clamorous creditors, makes it highly probable that the defendant gained this great bargain and this long indulgence in paying the price, by reason of the understanding at the sale and with the administrator that the purchase

was for Mollie E. Livingston, the minor daughter of the deceased. Competition would hardly be so great at a probate sale, where it was reported that a minor child, through a friend, was bidding and was seeking to buy in the home of her father.

The defendant, the attorney of the plaintiff, had no right to use the position he occupied by reason of his employment for his own advantage and to the prejudice of his client, for whom he bought the land, taking the title in his own name and agreeing to transfer it to her " when necessary," that is when required. In law and in equity the defendant is bound to transfer the title to the plaintiff. 4 M. 409 ; 14 An. 632.

As the defendant has enjoyed the use of the land he is not entitled to interest on the amount of the price paid by him, nor is plaintiff bound to refund the amount of the taxes paid by the defendant. The court erred in not allowing the reconventional demand of the defendant and settling at once the controversy between the parties. The demand is for professional services and for money advanced to the natural tutrix of plaintiff for her benefit, amounting in the aggregate to $2485 75, and it is established by the evidence in the record. Included in this is a note for one hundred dollars in gold, given by plaintiff's tutrix on the eighth March, 1866. From this reconventional demand must be deducted $450, the amount collected for rent of the Aaron Livingston place, and from Wright, by the defendant for plaintiff.

It is therefore ordered that there be judgment in favor of plaintiff requiring the defendant to transfer the title of the land in controversy in this case to her on tendering to him the note executed for the price, together with the sum paid by him on said note, or on tendering the whole price, if the defendant has paid it. It is further ordered that there be judgment in favor of the defendant against the plaintiff for one hundred dollars in gold, with eight per cent. interest from March 8, 1866; also for the further sum of nineteen hundred and thirty-five dollars and seventy-five cents, with five per cent. interest on twelve hundred and thirty-five dollars and seventy-five cents thereof from eighteenth October, 1870; and with eight per cent. interest on seven hundred dollars thereof from the eighth day of March, 1866. It is further ordered that the appellee pay costs of appeal; that defendant pay costs of the principal demand in the lower court, and plaintiff pay costs of the reconventional demand.