## BERTHELOT v. ISAACSON et al.

(Circuit Court of Appeals, Fifth Circuit. February 13, 1922.)

### No. 3686.

**Trusts ⬦31—Voluntary conveyance held to create implied trust.**

Where a grantee of property admitted that for some years she had lived with and cared for the grantor in the home of the latter, and that, though not of kin, their relationship was as intimate as that of mother and daughter, and it was not claimed that any money consideration was paid for the conveyance, and where on her death the grantor left a daughter, to whom she bequeathed all her property, the circumstances raised an implied trust, and the burden of explanation and affirmative proof of the complete fairness of the transaction rested on the grantee.

Appeal from the District Court of the United States for the Eastern District of Louisiana, New Orleans Division; Rufus E. Foster, Judge.

Suit in equity by Mrs. Beatrice Berthelot, widow of Alvin E. Herbert, against Mrs. Aline J. Isaacson and others. Decree for defendants, and complainant appeals. Reversed and remanded.

W. J. Waguespack and Herbert W. Waguespack, both of New Orleans, La., for appellant.

Charles Carroll, Joseph W. Carroll, and Henry G. McCall, all of New Orleans, La., for appellees.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. Mrs. Celeste Berthelot was an elderly woman residing in the city of New Orleans, who owned certain property situated in the Sixth district of said city. She had, on July 12, 1911, borrowed $4,000 from the Union Homestead Association, and to secure the same had conveyed said property by an act of sale to said association, and had contemporaneously received from said association a reconveyance, which reserved a vendor's lien and special mortgage to secure said $4,000; she pledging at the same time 40 shares of the stock in said association as additional security for said loan. Mrs. Berthelot had a daughter, Mrs. Beatrice Berthelot Hebert, a widow, complainant in the court below and appellant, with whom she had had some disagreement arising from a remarriage which Mrs. Hebert proposed. Mrs. Hebert had gone to California. The defendant, Mrs. Isaacson, now Mrs. Simon, was living with Mrs. Berthelot. Their relations were very close; although not actually related, they treated

each other as mother and daughter, and Mrs. Isaacson called Mrs. Berthelot and spoke of her as her mother, and was apparently looking after her.

Mrs. Berthelot was evidently unable to keep up her payments to the association, which was pressing her for settlement. On July 31, 1918, by some arrangement with Mrs. Isaacson, Mrs. Berthelot transferred said property to said Homestead Association for a stated price of $4,300, and upon the same day said association granted a loan of $4,-300 to Mrs. Isaacson, as shown by the minutes of the Homestead Association, in which the president reported that, the application for this loan having been approved, he had signed the act of sale from Mrs. Berthelot to the association for $4,300 and the act of resale from the association to Mrs. McEniry (Isaacson) for $4,300. The only payment shown in the matter was a check of the association for the sum of $4,300, drawn to the order of Mrs. Isaacson and indorsed by her to the notary public before whom these acts had been executed. Mrs. Berthelot and Mrs. Isaacson continued to occupy the premises, moving into a small house on the rear thereof and renting out the main buildings. About a year thereafter, Mrs. Berthelot made a trip to California to visit her daughter, Mrs. Hebert. While there she executed a will, in which she bequeathed all of her property to Mrs. Hebert, and on the 29th of June, 1919, she died.

It appeared that shortly before leaving New Orleans for California she had made a will in the holographic form in favor of Mrs. Isaacson, constituting her universal legatee, expressing therein the hope that she would see that the minor children of Mrs. Hebert should never want for anything. Mrs. Isaacson went into possession of the property. It appears that she had subsequently made an additional loan of $2,000 and sold the rear part of the premises for $4,250 cash. She admits in her answer that the remaining part of the property is worth approximately $7,000. Mrs. Hebert, on April 9, 1920, filed a bill of complaint, alleging that Mrs. Berthelot was induced to make the transfer of said property to Mrs. Isaacson on the representation that she believed it to be necessary to secure the same to her grandchildren, the children of Mrs. Hebert, from being dissipated by complainant and her intended husband. She prayed that upon payment by her of the amount due to the Homestead Association that Mrs. Isaacson should account for the proceeds of the sale of the part sold to the Eureka Homestead Association, and be required to reconvey the property to Mrs. Hebert.

The answer of the defendant admitted the relationship between herself and Mrs. Berthelot, and said that for many months prior to her death Mrs. Berthelot lived with said defendant, was in feeble health, and unable to work, and that friendship and intimacy existed between them. The letters introduced showed that their relationship was as intimate as that of mother and daughter, and that the defendant called and spoke of Mrs. Berthelot as her mother. No proof was introduced of anything paid to Mrs. Berthelot for the conveyance of said property. The answer of the defendant did not so claim. A subsequent answer of the defendant to a petition for rehearing of the case

admitted the receipt of all of the money, but claimed $378.92 was expended on account of Mrs. Berthelot. The defendant, although present in court, did not take the stand, or offer any explanation or testimony as to the reasons for the vesting of the title to this property through the Homestead Association in her.

The court below held that there was nothing in the case to create an implied trust, although it held that the property was sold for a good deal less than it was worth at the time. While the law of Louisiana prohibits the creation of express trusts, it has been ruled by the Supreme Court of the United States that this does not abolish implied trusts. Gaines et al. v. Chew, Executor, 2 How. 619, 650, 11 L. Ed. 402. It has also been held by the United States Circuit Court for Louisiana:

"The purchase by Bell, with the money of the bankrupt estate, subjected the property, though standing in the name of Bell, to a resulting trust in favor of the bankrupt estate. Perry, Trusts, § 128; Trench v. Harrison, 17 Sim. 111; Gaines v. Chew, 2 How. (43 U. S.) 619; McDonogh v. Murdoch, 15 How. (56 U. S.) 367. This same doctrine is recognized in Louisiana: Hall v. Sprigg, 7 Mart. (La.) 244; Rhodes v. Hooper, 6 La. Ann. 357; Giannoni v. Gunny. 14 La. Ann. 632; Livingston v. Morgan, 26 La. Ann. 646." Flanders v. Thompson et al., 3 Woods, 9, 11, Fed. Cas. No. 4,853.

The jurisdiction for enforcement of such trusts is a well-known equitable jurisdiction of the United States courts sitting in equity. The procedure for enforcing such rights is—

"not determined by local laws or rules of decision, but by general principles, rules, and usages of equity having uniform operation in those courts whereever sitting. Rev. Stat. §§ 913, 917; Neves v. Scott, 13 How. 268, 272; Payne v. Hook, 7 Wall. 425, 430; Dodge v. Tulleys, 144 U. S. 451, 457; Mississippi Mills v. Cohn, 150 U. S. 202, 204." Guffey v. Smith, 237 U. S. 101, 114, 35 Sup. Ct. 526, 530 (59 L. Ed. 856).

It is well settled that:

"When two persons occupy to each other a confidential or fiduciary relation, and a sale is made by the party reposing confidence to the party in whom confidence is reposed, equity raises a presumption against the validity of the transaction; and to sustain the sale the buyer must show affirmatively that the transaction was conducted in good faith, without pressure of influence on his part, and with express knowledge of the circumstances and entire freedom of action on the part of the seller. There is a well-defined distinction between undue influence arising from acts which the law deems fraudulent, and undue influence arising from fiduciary relations existing between the parties. The term 'fiduciary or confidential relation,' as used in this connection, is a very broad one." 26 R. C. L. 1250.

See, also, Townes v. Townes (C. C. A.) 270 Fed. 744, 748.

We think that the admissions in the answer of the defendant in this case, and in the correspondence introduced, show that such a confidential relationship existed between these parties that the burden of explanation and affirmative proof of the complete fairness of this transaction is upon the defendant, and that the court therefore erred in holding that under the proof in the case no implied trust existed.

The decree of the District Court is reversed, and the case remanded for further proceedings in accordance with this opinion.

Reversed and remanded.