HIGGINS, Justice.
 

 This is a petitory action by major and minor heirs against their undertutor and his former wife. Plaintiffs seek to have the tax sale, under which defendants claim, annulled and set aside on the grounds that the undertutor was legally incapable of purchasing their property, and that the description of the property in the tax sale was insufficient to identify the property. They also pray for the value of the use of the property and the timber cut therefrom.
 

 The defendants denied that the undertutor purchased the property and averred that his wife purchased it with her separate and paraphernal funds. They denied that the description of the property was fatally defective and pleaded prescription of three years under article 10, section 11, of the Constitution of 1921, as amended in 1932 (see act No. 147 of 1932, § 1). In the alternative in reconvention, they claimed $133.50 for improvements alleged to have been made on the property, and $139 for taxes alleged to have been paid for the years 1929, 1930, 1931, 1932, and 1933, plus 10 per cent, interest thereon.
 

 There was judgment in favor of the plaintiffs annulling the tax sale and recognizing the plaintiffs as the owners of the land and awarding them possession thereof, and allowing them $177.98 for the value of the timber cut and removed therefrom, and the use of the lands; and rejecting the reconventional demand.
 

 Defendants appealed.
 

 The Court of Appeal reversed the judgment of the district court holding that the tax sale was valid and recognizing the under-tutor’s former, wife as the owner of the property. 163 So. 764.
 

 The plaintiffs applied to this court for a writ of certiorari and on the rule nisi issued in
 
 connection with the
 
 application, the defendants filed the record in this court. The case is now before us for review.
 

 It is our opinion that the motion to dismiss the appeal was unfounded and correctly denied.
 

 We agree with our learned brothers of the Court of Appeal that the exceptions of no right or cause of action were without merit. Therefore, they were properly overruled.
 

 This brings us to the issue as to the undertutor’s capacity to purchase the property.
 

 George Allen Brown died intestate on April 17, 1924, leaving four minor children, issue of his second marriage and plaintiffs herein. His widow applied to be appointed as natural tutrix of the children, and certain real estate that he owned was appraised in the inventory at $1,200. On April 29, 1924, Paul E.
 
 *91
 
 Tauzin, one of the defendants herein, was appointed and took his oath as under-tutor of the minors. On October 18, 1924, the minors, in a friendly partition suit, acquired a farm described as the N. W. % of the S. W. Sec. 15, and S. W. % of N. E. % and S. E. % ofN. W. Sec. 22, Tp. 9, R. 8. On August 12, 1926, the tutrix petitioned the court for authority to marry Chris. Ranschkolb and retain the tutorship, the undertutor concurring therein. The court approved the recommendation and appointed the intended husband as cotutor. After her marriage, the tutrix left the parish of Natchitoches, where the farm was situated, and on July 5, 1930, the sheriff and ex officio tax collector sold, at public sale, to Mrs. Paul E. Tauzin, wife of the undertutor, the property erroneously described as the N. W. % of the S. W. %, Sec. 15, and S. W. of N. E. % and S. E. % of N. W. %, Sec. 22, Tp. 8, R. 9.
 

 A large part of the 80 acres of the Brown tract in section 22 was under cultivation, having two ordinary farm houses thereon. The' 40 acres located in section 15 were wooded and not physically occupied.
 

 After the tax sale, the undertutor’s wife took possession of the farm and later she and her eight children moved on the property in question, which had theretofore been occupied ■ by tenants placed thereon by the absent tutrix.
 

 In addition to the documentary evidence which plaintiffs introduced to establish most of the above facts, they also filed in evidence an act of sale by the undertutor to his wife, dated September 25, 1933, wherein he conveyed to his wife “his undivided one-half community interest,” in the 120-acre Brown farm, which was sold for the unpaid taxes of 1929 by the sheriff to the undertutor’s wife. This deed substantially states that the property was acquired at tax sale and the tax deed recorded on July 16, 1930, and, for the purpose of the sale, the price was fixed at $8 per acre. This sale was recorded on February 5, 1934.
 

 The defendants testified that, while they were living in the same house, they had not cohabited for more than four years and separated on September 25, 1933; that they were divorced on December 4, 1933, on the ground of having lived separate and apart for more than four years; that the wife purchased the property with her separate and paraphernal funds; that the undertutor at no time claimed any interest in the farm 'in question and abandoned any rights that he might have to his former wife; that they easily located the tract of land, because they knew it was the Brown property; and that she and her eight children, one of whom was seven months old at the time the case was tried on February 20, 1935, lived on the property after it was purchased at the tax sale.
 

 We are of the opinion that the unsupported and uncorroborated testimony of the defendants to the effect that the wife purchased the property with her separate and paraphernal funds is insufficient to overcome their joint declaration in the act of sale of September 25, 1933, in
 
 *93
 
 which they declared that the property was community property. The statement contained in this deed was made at an unsuspicious time and is in accord with the presumption of law that where property is purchased in a married woman’s name and there is no declaration in the act of sale that it was purchased with her separate and paraphernal funds, the law presumes that it belongs to the community of acquets and gains. There was no such declaration in the tax deed. Succession of Peter Gabriel Winkler, 184 La. 463, 166 So. 140, decided February 3, 1936. See, also, Blunson v. Knighton et al. (La.App.) 140 So. 302.
 

 At the time the tax sale was made on July 5, 1930, the defendants admitted that they were living in the same house with their children, although they say they were not on friendly terms at the time. This voluntary estrangement would not dissolve the community of acquets and gains which was legally dissolved only by the judgment of divorce on December 4, 1933. Furthermore, it was shown that the wife was an illiterate woman who was unable to read and write and sign her name and defendants failed to show that she had a separate estate or income. We concude that if the tax sale he held to he legal, that the evidence shows that the property would fall in the community of acquets and gains which existed between the defendants. The case is, therefore, to be treated as one where the undertutor purchased the property belonging to the minors, whom he represented at the tax sale during the absence of the tutor from the parish where the property is located and where the tutorship proceedings took place.
 

 In the case of Monget, Tutor, v. Tessier, 5 La.Ann. 165, the undertutor, who employed an attorney for the purpose of instituting the necessary proceedings to deprive the tutor of the minors of the tutorship and to compel him to render an account of his administration, allowed the attorney $375 for his fee. The newly appointed tutor objected to the appropriation of the fund for that purpose on the grounds:' “That the under-tutor was without authority to receive and control the assets of the minors; and that the defendant, as depositary, is liable for an illegal disposition of the property deposited.” In reversing the judgment of the lower court, and in holding that the undertutor had authority to represent and bind the minors, the court said:
 

 “As a general rule under-tutors are without authority to receive and control the assets of the minors. But in the cases provided by law, they have power to employ counsel to institute the proceedings necessary to deprive the tutor of the tutorship, and to protect the property of the minors from dilapidation and waste. That power necessarily implies the further power of stipulating with the counsel employed a proper compensation. In this case it is proved, that five hundred dollars would have been a reasonable compensation for attending to the suit of Tyler vs. Walker; and the under-tutor has only allowed $375. The amount being reasonable, if Davidson was entitled to compensation, he could not
 
 *95
 
 be compelled to refund it on account of the informal manner in which it came to his hands. The payment, on that hypothesis, is valid, and operates a discharge of the defendant pro tanto.”
 

 This decision is in accord with the general tenor, spirit, and purpose of the articles of the Civil Code dealing with tutorship, which places upon the under-tutor certain duties and responsibilities to protect the minor’s interest. Under article 278, R.C.C., the undertutor must see that evidence of the minor’s legal mortgage against the property of his tutor is properly recorded or inscribed. Under article 275, R.C.C., the undertutor acts when the tutor’s interest is adverse to that of the minor. He also has the right and it is his duty to compel the tutor to file his annual account. Under article 279, R.C.C., when the tutorship becomes vacant, it is the duty of the undertutor to cause the appointment of another tutor and he is responsible for neglecting to do so.
 

 In Saunder’s Lectures on the Civil Code, in dealing with the subject “Duties of Under-tutor” at page 59, he states:
 

 “Finally, when the tutorship becomes vacant, it is the under-tutor’s duty to see that it is filled. If the tutor dies, moves,
 
 is absent
 
 or in any other way the tutorship becomes vacant, it is the under-tutor’s duty to see that a successor is appointed.” (Italics ours.)
 

 Under article 303, R.C.C., a tutor is subject to exclusion or removal, who manifests incapacity or dishonesty in the management of the minor’s affairs. It is the duty of the undertutor to institute such proceedings. Under article 306, R.C.C., the undertutor is subject to exclusion or removal on the same grounds as a tutor is subject to that action.
 

 In Saunder’s Lectures on the Civil Code, at page 58, he states:
 

 “The under-tutor is, so to speak, the watchdog of the tutor. He is there all the time; not occasionally as the family meeting, but he is supposed to exercise a supervision over what the tutor is doing from the time the tutor is appointed until the tutorship ends.”
 

 In the instant case the undertutor knew or should have known that the tutor was absent from the parish; that she had neglected and failed to pay the taxes of 1929 assessed against the farm; that the property was being advertised for sale; and that his wife had purchased it. It was his plain duty, under the law, to have acted in the absence of the tutor, by having the court authorize the necessary proceedings to protect the minors’ interest. This could have been accomplished by borrowing sufficient funds on the property for the purpose of paying the taxes or selling a portion of the property for that purpose. The undertutor should, at least, have been present at the tax sale and attempted to have only a small part of the farm sold for the taxes. This was permissible under article 10, section 11, of the Constitution of 1921, as amended, but he did not even make any effort or try to protect the minors. The defendants’ own evidence shows that certain .timber was sold
 
 *97
 
 off of this property amounting to the sum of $60, which was more than adequate to pay the taxes of 1929, which amounted to approximately $39. In other words, by the undertutor calling the district court’s attention in a proper proceeding to the fact that the minors were in danger of losing their property, which defendants themselves appraised at $960, the minors’ interest would have been protected and the sale would not have taken place. It was only through his neglect of his duty as undertutor that this most unusual situation was permitted to obtain. He certainly cannot thereby enrich himself and his wife at the expense of the minors,' whose interest it was his sworn, legal, and moral duty to protect.
 

 The Court of Appeal. cited the case of Smith et al. v. Krause & Managan Lumber Co., 125 La. 703, 51 So. 693, as being in point, showing that the undertutor occupied no fidicuary relation to the minors and that he is not interdicted by law from purchasing at public sale property belonging to the minors for whom he acts as undertutor. We do not think that case apposite here, because there the court found that the recommendation of the family meeting — in which the undertutor participated — to sell the property at public auction to pay debts was unnecessary, an order of court being all the law required; and that as the tutor was present and representing the minors, the undertutor could legally purchase the property at public auction. But the court was careful to point out that there may be cases where the undertutor could not purchase the minors’ property. In short, in that case the minors’ interest was protected by order of court authorizing the sale of the property and the presence of the tutor. In the instant case, the minors were unrepresented and their interest abandoned by both the tutrix and undertutor, contrary to their plain duty.
 

 It is our opinion that the tax sale is null and void.
 

 The Court of Appeal also stated that some of the plaintiffs were majors and some minors at the time the tax sale took place. The record shows that the eldest plaintiff, Emily Brown Gotman, was twelve years old on April 28, 1924, and, consequently, at the time of the tax sale, she was about eighteen years of age. There is nothing in the record to show that she had married prior to the time of the tax sale. We must conclude from the record as made up that plaintiffs were all minors at the time the tax sale was effected.
 

 The Court of Appeal held that the three-year prescriptive period under section 11 of article 10 of the Constitution of 1921, as amended, was applicable and that plaintiffs’ action in attacking the tax sale was therefore barred. The pertinent part of that section of the article reads as follows:
 

 “The sale shall be without appraisement and the property sold shall be redeemable at any time during three years from date of recordation of the tax sale, by paying the price given, including costs and five per cent penalty thereon, with interest at the rate of one per cent per month until
 
 *99
 
 redeemed. No judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, with ten per cent per annum interest on the amount of the price and taxes paid from date of respective payments, be previously paid to the purchaser; provided, this shall not apply to sales annulled on account of taxes having been paid prior to the date of sale, all deeds of sale made, or that may be made, by the collectors of taxes, shall be received by courts in evidence as prima facie valid sales.
 

 “No sale of property for taxes shall be set aside for any cause except on proof of payment, of the taxes for which the property was sold prior to the date of the sale,
 
 unless, the proceeding to annul is instituted within six months from service of notice of
 
 sale,
 
 which notice shall not be served until the time of redemption shall have expired and within five years from the date of the recordation of the tax
 
 deed,
 
 if no notice is given."
 
 (Italics ours.)
 

 It appears that no notice was given to the plaintiffs by the defendants after the three-year redemptive period had elapsed. Consequently the five-year prescriptive period dating from the recordation of the tax deed would apply in this case. The tax sale was made on July 5, 1930, and recorded on July 16, 1930. The plaintiffs had five years from the latter date in which to institute the annulment proceedings. This suit was instituted on December 11, 1934, and, consequently, well within the five-year prescriptive period.
 

 The trial judge dismissed the reconventional demand, because he was of the opinion that the defendants were not in good faith. Good conscience and a spirit of fair dealing, aside from the under-tutor’s legal sworn duty, required him to promptly act to protect the interest of the minors. We, therefore, agree that the defendants were not in good faith.-
 

 The provisions of section 11 of article 10 of the Constitution of 1921, as amended, do not make any distinction between tax sales made to a tax purchaser in good or bad faith. It is specifically provided that “the price and all taxes and costs are paid, with ten per cent per annum interest on the amount of the price and taxes paid from date of respective payments,” shall be refunded to the taxpayer before the judgment annulling the tax purchase shall have effect. It is our opinion that the defendants’ claim in reconventiori should be recognized as to the taxes paid.
 

 The evidence shows that the defendants paid taxes on the property for the respective years and on the respective dates, as follows:
 

 Taxes for 1929 interest and costs
 

 (Tax Sale) paid July 14, 1930 .. $ 38.18 Taxes for 1930 — paid February 6, 1931 ........................ 24.64
 

 Taxes for 1931 — paid February 26, 1932 ........................ 22.57
 

 Taxes for 1932 — paid January 27, 1933 ........................ 28.89
 

 Taxes for 1933 — paid January 20, 1934 ........................ 24.99
 

 Total ......................$139.27
 

 Defendants are entitled to recover 10 per cent, interest per annum on the several
 
 *101
 
 sums paid from their respective dates of payment.
 

 Plaintiffs deny that defendants made any improvements on the property and filed a plea electing not to accept them if they were shown to have been made. The repairs were of a minor nature such as digging ditches, repairing fences, and installing a crib. Under article 508, R.C.C., plaintiffs were entitled to decline the improvements and therefore not required to pay for them. Quaker Realty Co. v. Bradbury, 123 La. 20, 48 So. 570. See, also, Davenport et al. v. Knox et al., 35 La.Ann. 486; Hickman et al. v. Dawson et al., 35 La.Ann. 1086, 1087, and Edmiston v. Tulane Investment Co. et al., 9 La.App. 112, 119 So. 75, and articles 3452 and 3453, R.C.C.
 

 Having concluded that the defendants were in bad faith, plaintiffs are entitled to recover for the use of the land and the value of the timber removed therefrom. It appears that 40 acres of the land was under cultivation and plaintiffs seek to recover $4 per acre per year for rental for the years of 1932, 1933, and 1934, i. e., $160 per year for those three years, or $480. There are two small farm houses on the land and the amount claimed is fair and reasonable. It was shown that the defendants sold timber amounting to the sum of $60. We shall therefore allow the plaintiffs the sum of $540. Donaldson v. Hull, 7 Mart.(N.S.) 112; Lowry v. Erwin, 6th Rob. 192, 39 Am.Dec. 556; Hill v. Bowden et al., 3 La.Ann. 258; Rhodes v. Hooper, 6 La.Ann. 355, 356; Stille v. Shull, 41 La.Ann. 816, 6 So. 634.
 

 It is apparent that the defendants owe the plaintiffs in excess of the amount that the plaintiffs owe the defendants for the taxes and therefore the judgment of this court will be final and take effect after the usual delay for rehearing has expired, in the event this judgment is not reversed or modified.
 

 For the reasons assigned, the rule nisi issued herein is made absolute, the writ of certiorari is perpetuated, and the judgment of the Court of Appeal is annulled and set aside, and it is now ordered, adjudged, and decreed that there be judgment herein in favor of the plaintiffs Otho Brown, Mrs. Emily Brown Gotmann, Rebecca Brown, and Frank Brown, and against the defendants Mrs. Dona Mae Tauzin, divorced wife of Paul E. Tauzin, and the said Paul E. Tauzin, annulling and setting aside the tax sale of July 5, 1930, recorded in C.O.B. 164, Folio 426, parish of Natchitoches, and recognizing the plaintiffs as the owners of and entitled to possession of the following described property, to wit: The N. W. % of the S. W. % °f Sec. 15, and the S. W. % of the N. E. 14 and the S. E. % of the N. W. % of Sec. 22, Tp. 9 R. 8 W., situated in the parish of Natchitoches, state of Louisiana.
 

 It is further ordered, adjudged, and decreed that the sheriff of the parish of Natchitoches be and he is hereby ordered and directed to place plaintiffs in possession of said property, according to law.
 

 It is further ordered, adjudged, and decreed that there be judgment herein in favor of the plaintiffs and against the de
 
 *103
 
 fendants in the sum of $540, with legal interest from judicial demand or December 11, 1934, until paid or compensated.
 

 It is further ordered, adjudged, and decreed that the defendants have judgment in reconvention against the plaintiffs for the amounts hereinafter set forth, with 10 per cent, interest per annum from their respective dates of payments until paid, to wit:
 

 Taxes for 1929, interest and costs,
 

 (Tax Sale) paid July 14, 1930 .. $ 38.18 Taxes for 1930 — paid Feb. 6,
 

 1931 ........................ 24.64
 

 Taxes for 1931 — paid Feb. 26,
 

 1932 ........................ 22.57
 

 Taxes for 1932 — paid Jan. 27,
 

 1933 .................'....... 28.89
 

 Taxes for 1933 — paid Jan. 20,
 

 1934 ........................ 24.99
 

 Total ......................$139.27
 

 The right of plaintiffs to claim for additional use of the property since the suit was filed and defendants’ right to claim for additional taxes paid since the suit was filed are reserved to them respectively. Defendants to pay the costs of both courts.
 

 O’NIELL, C. J., absent.