McBRIDE, Judge.
The questions presented by the case now before us are whether the trial judge abused his discretion in granting a new trial upon the application of defendants, Cortinas and Gulotta, and whether a tax adjudication to the State is null and void because the deed did not reasonably identify the property.
On November 7, 1931, certain property described as:
“A certain portion of ground and improvements thereon in the Fifth District of the City of New Orleans, in Square bounded by Alluvial Land Purchase Co., Inc., Tract, designated as Lots Nos. 9, 10, 11, 12, and 13 in Square No. 1, Bk. 4; Fol. 228; said lots measure various feet front by depth of various feet,”
was adjudicated to the State of Louisiana by the State Tax Collector for the Parish of Orleans for delinquent taxes due the State for the year 1930, on an assessment made in the name of F. Hamilton, notice of which was duly spread upon the Conveyance Records of this parish. During 1956 the State sold the property to Joseph M„ Cortinas and Bernard Gulotta under the aforesaid description, and a patent evidencing the sale was issued to said persons whcc still appear as the registered owners. On November 12, 1956, the widow and heirs of the delinquent tax debtor, F. Hamilton, who died subsequent to the date of the tax adjudication to the State, brought this suit seeking to have decreed null and void both the tax sale to the State and the State’s sale to Cortinas and Gulotta on the ground that the description of the property therein is insufficient in that the number of this square in which the lots are located is er *202 roneous and the description is, moreover, too vague and indefinite to identify the property purportedly sold. The plaintiffs impleaded as defendants the Register of State Land Office, the State Tax Collector for the Parish of Orleans, and Cortinas and Gulotta, the State’s vendees.
The defendant State officials filed pro forma answers generally denying plaintiffs’ allegations that the description of the property was insufficient to identify it. Cor-tinas and Gulotta first filed an exception of no cause or right of action which was referred to the merits of the case, and they then filed a joint answer denying plaintiffs’ charge that the two transactions are illegal; they averred that their title to the property was good, and pray for judgment recognizing them to he the lawful owners of the property as it is described in their answer (i. e. the legal description of the property as acquired by Fred J. Hamilton) and confirming their title thereto.
After a trial of the matter, the court below rendered judgment in favor of the plaintiffs as prayed for, but upon a motion for a new trial alleging that the judgment was contrary to the law and the evidence being filed by Cortinas and Gulotta, the judge granted a new trial which was had, after which the court reversed himself and rendered and signed a judgment in favor of all defendants dismissing plaintiffs’ suit and in favor of Cortinas and Gulotta recognizing and confirming their title to the property. The plaintiffs have appealed from that judgment.
Trial, courts may revise their judgments by granting a new trial. C.P. art. 557. A new trial must be granted if there be good ground for the same. C.P. art. 558. If the trial judge thought he had erred in rendering the judgment in favor of plaintiffs, it then became his proper duty to grant a new trial and the appellate court must assume in that the new trial was ordered that the judge disapproved of his first judgment. The granting or refusal of a motion for a new trial, when the ground is not one of those contained in C. P. art. 560, is within the sound discretion of the trial judge, and his action in granting or refusing a new trial will not be disturbed on appeal unless it clearly appears that he has abused his discretion. DeFrances v. Gauthier, 220 La. 145, 55 So.2d 896. We fail to find there was any abuse of discretion by the court below in the matter of granting the new trial in this case.
The advertisement and sale of property for delinquent taxes is provided for in LS A-R.S. 47:2181 which in part reads:
“For the purpose of tax sales it shall be sufficient to assess and describe all property assessed in the following manner: by designating the tract or lot by the name by which it is commonly known, or by the number or letter by which it may be usually designated upon the regular assessment rolls or upon an official or private plan or sketch or by giving the boundaries or the names of the owners upon each side, or by the dimensions or description or name given in the act translating the ownership thereof, or by such other further description as may furnish the.means of reasonable identification.”
LSA-R.S. 47:2184 sets forth what a tax sale conveys and what a tax purchaser acquires in the following language:
“The tax sale shall convey, and the purchaser shall take, the whole of the property assessed to the delinquent taxpayer if it is the least quantity sufficient to satisfy the aggregate of all taxes, interest, 'penalties and costs. * * * The tax sale shall convey and the purchaser shall take the entirety of the property intended to be assessed and sold as it was owned by the delinquent taxpayer regardless of any error in the dimensions or description of the property as assessed and sold. The tax collector in the advertisement or deed of sale may give the full description according to original titles.”
*203 In litigation involving the legality of a tax sale made under an erroneous or insufficient description of the property intended to be assessed, the cases generally turn on the point as to whether the description is such as will enable interested persons to reasonably identify the property which was intended to be the subject of the sale. There are many such cases
In Knapp v. Jefferson-Plaquemines Drainage Dist., 224 La. 105, 68 So.2d 774, 778, the Supreme Court was concerned with an uncertain description and said:
“In the jurisprudence of this state it is well settled and established that, where a tax sale is made under an assessment in the name of the owner and an error is made in the description of the land intended to be assessed, the tax sale under such assessment is valid if, notwithstanding the error in description, the land can be reasonably identified by the assessment or description as found in the tax deed, or if the description therein furnishes the means for such identification. Further, if a description of the property intended to be assessed or sold is so indefinite and uncertain as to be defective, resort may be had to evidence outside the assessment roll or tax deed to identify the property, provided such evidence establishes unmistakably the identity of the property. The cases generally hinge on the point as to whether the description is such as to enable interested persons to identify the property. Tillery v. Fuller, 190 La. 586, 182 So. 683, and the numerous authorities therein cited; Jackson v. Irion, 196 La. 728, 200 So. 18, 133 A.L.R. 566; Yuges Realty, Ltd. v. Jefferson Parish Developers, Inc., 205 La. 1033, 18 So.2d 607.”
In addition to the cases cited in Knapp v. Jefferson-Plaquemines Drainage Dist., supra, see, also, Gayle v. Slicer, 188 La. 940, 178 So. 498; Brown v. Tauzin, La.App., 163 So. 764 (rev. on other grounds 185 La. 86, 168 So. 502); and Cobbs v. Jackson, La.App., 85 So.2d 368, wherein many cases are cited and quoted from.
The errors complained of in the cited cases are analogous to the errors complained of here.
F. Hamilton (whose correct name is Fred J. Hamilton, Sr.), to whom the assessment was made, acquired title to the-property during 1922, under this description:
“Five lots of ground, designated by the numbers 9, 10, 11, 12 and 13 in square T, together with all the buildings and improvements thereon and all the rights, ways, privileges, servitudes and advantages thereunto belonging or in anywise appertaining, situated in the Fifth District of the City of New Orleans in the square bounded by Verdum and Marne Avenues, Victory Drive and Wilson Drive, as delineated on a plan of survey and subdivision of record in the Parish of Orleans, as per plan of James S. Webb, dated April 21, 1922.”
There is no error in the assessment to F. Hamilton for 1930 taxes under which the tax adjudication was made to the State. In Book 4 at Folio 228 (Parish of Orleans for 1930) there appears the assessments of all lots in Square “I” of the Alluvial Land Purchase Co., Inc., Tract, which fronts on Victory Drive and extends to the line of W. S. Bender on the east and to the south line of J. J. Manson on the west. Said book and folio shows said tract is composed of Squares “A” through “P,” included in which, of course, is Square “I.” “F. Hamilton” is assessed for Lots 9, 10, 11, 12 and 13, which he owned in Square “I” and the amount of the assessment is stated to be $60. The exact location of the lots in Square “I” is not shown nor are the dimensions of the lots set forth, but these circumstances do not adversely affect the verity of the .assessment, as a description of the property by lot number or letter is all that is necessary. LSA-R.S. 47:2181, supra.
*204 However, when the tax adjudication for unpaid 1930 taxes was made to the State an error appears, as it is recited that the property is located in the Fifth District of New Orleans in square bounded by Alluvial Land Purchase Co., Inc., Tract, but the lot numbers were correctly enumerated. After the lot numbers are stated, the description continues “in Square No. 1, Bk. 4; Fol. 228; said lots me'asure various feet front by depth of various feet.”
The State Tax Collector testifying on behalf of the defense attributed the discrepancy in the designation of the square to a typographical error which arose when copying the description from the assessment rolls. He stated it was a certainty it was intended that Square “I” as it is designated in the assessment would be adjudicated for the delinquent taxes rather than Square 1 as appears in the adjudication.
It is most significant to us that the description in the tax adjudication mentions “Bk. 4; Fol. 228” which we take as an abbreviation meaning the book and folio wherein is to be found the assessment on which the tax adjudication is founded. Folio 228 of Book 4 of the rolls was placed in evidence and is represented by a photostatic copy in the transcript, and this reflects an almost complete description of the property which the tax debtor owned and for which he was assessed. It undoubtedly was the purpose of the tax collector who made the adjudication in 1931 to supplement the description in the tax sale by the reference to the assessment which reflects the full description of the property.
Krebs, who made a survey of the five lots in Square "I” on behalf of Cortinas and Gulotta, understood this to be the case for he testified he consulted Folio 228 of Book 4 of the assessment rolls for 1930 and therefrom was able to obtain a description of the property which aided him in locating and surveying the lots. Krebs experienced no difficulty in identifying the property, the four corners of which he marked by stakes for the purpose of delineation.
If Krebs understood that the reference to Assessment Book 4 was the means used by the tax collector to supplement and amplify the description of the lots as appears in the tax adjudication, there is no reason we know of why any reasonable person interested in the tax adjudication would not comprehend upon reading the description, as did Krebs, that he must resort to the tax rolls for a full or correct description.
No significance should be attached to the fact that the five lots were mentioned as being in Square 1 when in reality they are located in Square “I”, because a most cursory examination of the assessment rolls which were referred to would have shown unmistakably just what property the tax adjudication embraced and the square and. tract in which it is located.
Another fact that cannot be overlooked is that the tax collector made a notation in the 1930 Assessment Book 4 at Folio 228 that the five lots assessed to F. Hamilton in Square “I” had been “Sold to State 11/7/31.” We think such notation had the effect of further identifying the subject of the tax adjudication with the assessment of the five lots to F. Hamilton.
Appellants point out what they contend is a fatal ambiguity in the description in that it is stated the lots are “bounded by Alluvial Land Purchase Co., Inc., Tract,” which they say is meaningless. This is of no moment, for if it could be said an ambiguity exists, it must yield to the description in the assessment which must govern in view of the reference made thereto.
To identify the property which the tax collector intended to adjudicate to the State, it was not necessary to resort to any evidence dehors the adjudication and assessment.
In Heirs of Weber v. Martinez, 7 Orleans App. 38, it was held by this court that the assessment rolls could no be resorted to “unless the rolls be referred to and made part of the description in the deed.” In *205 that case no reference was made to the rolls in the description in the tax deed, but here we have a direct reference made in the tax deed to Book 4, Folio 228 of the 1930 rolls. We conclude that whereas the assessment rolls in the instant case were referred to, such became an integral part of the description of the property which was intended to be adjudicated to the State for the delinquent taxes.
In Purcell v. Donaldson, 11 Orleans App. 80, our predecessors observed that a defective description in a tax deed may be supplemented by a reference to the title of the person assessed. If this be so, what objection could there be to reference being made to the assessment rolls to further the identification of the property subject to the tax adjudication ?
However, the defense did produce some outside evidence, but it would subserve no useful purpose to discuss the nature of same except to say in passing that it was shown F. Hamilton owned no other property in the Fifth District except that assessed to him on the 1930 assessment rolls at Book 4, Folio 228. The plaintiffs did not produce any countervailing evidence of any kind; they made no attempt to prove that there is a square designated by the Number 1 in the Fifth District, or that the tax debtor owned property located in Square 1 or anywhere else in the Fifth District except the property assessed to him in Square “I.”
In Gayle v. Slicer, supra [188 La. 940, 178 So. 500], the Supreme Court said:
“ * * * It is well settled that the identification of the land intended to be assessed, when there is an error in the description in the assessment, may be established by proof that the party in whose name the land was assessed owned only one tract of land within the area or subdivision mentioned in the assessment. * * * ”
We now hold that the property adjudicated to the State from which Cortinas and Gulotta derived their title is suceptible to being reasonably identified and the tax adjudication cannot be set aside on the ground asserted by plaintiffs.
LSA-R.S. 47:2181 (source Act 140 of 1890, Sec. 3) also provides:
“No tax sale shall be set aside or annulled for any error in description or measurement of the property assessed in the name of the owner provided the property sold can be reasonably identified. * * *”
In view of the conclusion that the tax adjudication to the State divested the tax debtor of all of his title or interest in the property, his widow and heirs lack any right or interest to inquire into or question the validity of the subsequent proceedings by which the State of Louisiana conveyed the five lots to Cortinas and Gulotta.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.