LUTHER E. HALL, Judge pro tem.
Plaintiffs, the children and grandchildren of Mrs. Alcide Bennett, instituted this suit to annul an adjudication in 1930 of certain property to the State for nonpayment of the 1929 State taxes, and to annul a sale and patent of such property by the State to the defendant, Hernandez, in the year 1957.
The defendant, Hernandez, reconvened asking for a correction of the description in his State Patent.
The District Court dismissed plaintiffs’ demand and granted the reconventional demand and plaintiffs have appealed.
The record discloses that Mrs. Bennett acquired the subject property as a single tract by Act of Sale recorded in February 1916, and that in April 1916 Mrs. Bennett’s vendor made a formal act of dedication of “Riverside Subdivision” comprising several plots owned by him as well as the tract conveyed to Mrs. Bennett. In that act Mrs. Bennett’s property was designated as lots 9 through 17 of square 257 bounded by Bailey, Barber, Thomas and James Streets, the said lots comprising the half square fronting on James Street.
In 1929 as well as in every year since her acquisition, the property was assessed in the name of Mrs. Alcide Bennett and described on the assessment rolls (in exact accord with the act of dedication and subdivision) as lots 9 through 17 of square 257, Riverside Subdivision, fronting on James Street, and the dimensions of the lots as shown on the assessment rolls correspond with the dimensions shown in the act of subdivision.
All of the remaining lots in said square 257 to wit lots 1 through 8 fronting on Thomas Street were assessed for the year 1929 to one Chester S. Smith by an assessment substantially accurate in all details. However, the record shows that these lots 1 through 8 had previously been adjudicated to the State for non-payment of the 1923 State taxes assessed to said Smith, and title to these lots remained in the State until patented to one Joseph J. Cimo in 1956.
Mrs. Bennett paid all taxes due on the property assessed to her from the date of her acquisition through the year 1928. The taxes for the year 1929 were not paid, and after notice to her by registered mail, the State Tax Collector proceeded to advertise for sale the property of Mrs. Alcide Bennett under the following description:
“A certain portion of ground and improvements thereon in the 5th District of the City of New Orleans, in square bounded by Bailey, Barker, Thomas, and James Streets, designated as lots 1 to 8 in square 257; said lots Nos. 1 to 8 measure 27 feet front on Thomas Street by a depth of 87 feet 2 inches.” (Emphasis added.)
For lack of an appropriate bid the property was adjudicated to the State under the above description, and title remained in the State until 1957 when the State sold to defendant, Hernandez, under advertise *474 ments, proces verbal and patent tracking the description quoted above.
From the foregoing it will be seen that the property belonging to Mrs. Bennett was correctly described on the assessment rolls for 1929 as lots 9 through 17 of square 257 fronting on James Street, whereas the State Tax Collector’s advertisement for delinquent tax sale described the property of Mrs. Alcide Bennett as being lots 1 to 8 of square 257 fronting on Thomas Street. It will further be seen that the latter description perfectly describes the property carried on the 1929 assessment rolls as being the property of Chester S. Smith, although as we have seen the title to the Smith property was then vested in the State, having been adjudicated to the State in 1923.
Neither Mrs. Bennett nor her heirs attempted to redeem the property from the State, nor did they institute an action of nullity within the five year period prescribed by Constitution Art. 10, Sec. 11, LSA, nor apparently did they do anything with respect to the property until the institution of this suit in 1958.
The record shows that the whole of square 257 of this subdivision has always been vacant, unimproved land, except that defendant, Hernandez, after he bought the interest of the State in 1957, constructed a fence around lots 9 through 17.
The issue presented to us for decision according to plaintiffs is “whether the 1929 adjudication and tax sale to the State is null and void insofar as it may apply to lots 9 through 17 on the grounds that said tax sale is so erroneously described as to render it a nullity”.
The defendant states the issue thus: “Is the adjudication to the State of the property owned by Mrs. Alcide Bennett in square 257 for unpaid 1929 taxes a nullity because through clerical error lots 1 through 8 were advertised instead of lots 9 through 17 ? ”
Under the provisions of Sections 3 and 4 of Act 140 of 1890 now found in LSA-R.S. 47:2181 and LSA-R.S. 47:2184, we find that:
“No tax sale shall be set aside or annulled for any error in description or measurement of the property assessed in the name of the owner provided the property sold can be reasonably identified". LSA-R.S. 47:2181. and
“The tax sale shall convey and the purchaser shall take the entirety of the property intended to be assessed and sold as it was owned by the delinquent taxpayer regardless of any error in the dimensions or description of the property as assessed and sold.” LSA-R.S. 47:2184. (Emphasis added.)
Plaintiffs’ main argument is that it is impossible to decide in this case whether the-tax collector’s intent was to sell:
a) Mrs. Bennett’s lots 9 through 17 fronting on James Street (although the tax collector erroneously advertised them as. lots 1 to 8 fronting on Thomas Street) ; or
b) Mr. Smith’s lots 1 through 8 fronting on Thomas Street (although the collector erroneously stated in advertisement and sale that they were assessed to Mrs. Bennett) .
The fact that lots 1 through 8 had already been adjudicated to the State for 1923 taxes does not conclusively negate the possibility that the Tax Collector might have caused them to be sold a second time, in view of the evidence adduced by plaintiff that in several instances properties previously adjudicated to the State have in fact been re-advertised and re-adjudicated to the State. This has even happened to some of the other property in the subdivision in question here. Of course such re-adjudications are complete nullities. See Waterman v. Tidewater Associated Oil Co., 213 La. 588, 35 So.2d 225; also Thomas v. Bomer-Blanks Lumber Co., La.App., 105 So.2d 299.
*475 But defendant introduced in evidence a postal return receipt card showing that Mrs. Bennett had received a registered letter from the State Tax Collector’s office about two months before the tax sale. On the face of this card appear the following notations in ink: “13/257-lot 9/17-74711”, and there was testimony by Mr. Gisch, who has worked in the Tax Collector’s office for 33 years, that the notations on the return receipt card indicate that the letter or notice mailed to Mrs. Bennett referred to lots 9 through 17 in square 257. The figure 13 is the number of the assessment district and the figure 74711 is the number of the assessment of Mrs. Bennett’s property on the 1929 rolls. While this is not conclusive proof that the letter mailed to Mrs. Bennett described the property correctly, there can be no doubt that at least the collector did give some kind of notice to Mrs. Bennett that he proposed to sell property for non-payment of taxes.
From the fact that notice was sent to Mrs. Bennett we conclude that the collector’s intent, formed weeks before the erroneous advertisement appeared, was to sell Mrs. Bennett’s property. Our conclusion is consistent with all aspects of the collector’s activity except for one error on his part. In preparing the advertisement his clerk erroneously copied the description of Smith’s property which was listed immediately above Mrs. Bennett’s property on the assessment rolls.
To reach the contrary conclusion, namely that Smith’s property was intended to be sold, requires at least three errors on the collector’s part: (1) He must have sent the notice to the wrong person; (2) in subsequently preparing the advertisement he must have again picked up the wrong name; and (3) he must have intended to sell property already adjudicated to the State which of course would be an absolute nullity.
Plaintiffs’ urge that even if the intention was to sell Mrs. Bennett’s property, the property assessed to her was so erroneously described in the advertisement and adjudication that the property intended to be sold cannot be reasonably identified; and that an error as serious as this is not cured by the constitutional peremption period of five years.
Plaintiffs concede of course that the jurisprudence is replete with cases where the courts have refused to nullify tax sales because of incomplete and erroneous descriptions in the tax deeds, but plaintiffs argue that all of these cases refer to descriptions which are inchoate and indefinite, and “to defects, insufficiencies or errors in descriptions which on their faces give the key to the true property to be sold for taxes”.
While this is true as to a great number of the reported cases we cannot agree with plaintiffs’ contention that erroneous descriptions in tax sales have been upheld only in such cases.
In Landry v. McWilliams, 135 La. 655, 65 So. 875, 876, the property was correctly described on the assessment rolls as “SE}4, Sec. 61, T. 9, R. 10E”. The advertisement and sale description erroneously described the property as “SE14, Sec. 61, T. 8 R. 10E”. There was, clearly, nothing on the face of that description to show that a different township number (and therefore an altogether different piece of property) was intended to be described.
See also Tillery v. Fuller, 190 La. 586, 182 So. 683, where the description gave a wrong section number — again an error not patent on the face of the description, which actually described an altogether different piece of property.
The tax sales were upheld in both of these cases. See Brown v. Tauzin, La.App., 163 So. 764 (reversed on other grounds 185 La. 86, 168 So. 502).
In both Landry and Tillery, as in the case before us, the tax debtor owned only one tract of land within the area or subdivision mentioned in the assessment and sale. In the Landry case the Court declares:
*476 “Whilst, therefore, the description in the advertisement, which was reproduced in the Sheriff’s deed was defective, in that it ascribed a somewhat greater acreage to the tract than was called for by the original title from the State, or by assessment, and located the tract in township 8, instead of township 9, it nevertheless announced that the intention was to sell a quarter section standing !in the name of the Est. Victorin LandryJ; and the evidence shows that the only quarter section in the parish which was owned by that estate was that which had been assessed to the decedent himself (as ‘Landry, Viet.’) which is located in township 9, and the N.W. corner of which touches the S.E. corner of township 8. * * *
“Our conclusion is that the description according to which the land in question was advertised and sold, was sufficient, within the language and meaning of the statute ‘to furnish the means of reasonable identification’, and that defendant acquired a good title.” (Emphasis added.)
It may be that the errors in description in Landry and Tillery resulted from copying the right description inaccurately (a “clerical error”), while here the error resulted from copying the wrong description accurately (a clerk’s error). But we fail to see any substantive distinction between the two situations, in both of which the end result is that property is described so erroneously as to accurately describe an altogether different piece of ground.
Plaintiffs cite Shelly v. Friedrichs, 117 La. 679, 42 So. 218, a decision which avoided a tax adjudication to the State and subsequent sale to a private individual because the description in the assessment gave boundaries and dimensions so contradictory and impossible as to describe no land whatever. It will be noted that in that case no land at all had been assessed. There could be no taxes due.
In the instant matter the assessment description was perfect in all details except for a trifling measurement error as to one of the lots.
Also cited by plaintiffs was Xeter Realty, Ltd., v. Samorini, 135 La. 976, 66 So. 318, a confirmation suit where the description in the deed from the State Auditor, although containing some similarities to the description of the land for which confirmation of title was sought, was said to call for a lot in another square, of different dimensions, and differently situated. The confirmation was denied. But the only showing as to land owned by the tax debtor was that, in the square claimed, the tax debtor owned no other property — “not particularily illuminating”, the Court there said, because the tax debtor might well have owned a lot in the other square described in the auditor’s deed: “for aught that .appears, the lot that (plaintiff) acquired may be there, awaiting an owner”.
In the matter before us, it is stipulated that the tax debtor owned no other property in Riverside Subdivision.
“It is well settled that the identification of the land intended to be assessed, where there is an error in the description in the assessment, may be established by proof that the party in whose name the land was assessed owned only one tract of land within the area or subdivision mentioned in the assessment. (Emphasis added.) Gayle v. Slicer, 188 La. 940, 178 So. 498, 500. See also Tillery v. Fuller, supra.
Plaintiffs argue that because the tax debt- or owned nine lots (9 through 17) and only eight lots (1 through 8) were advertised that this is a fatal defect because not enough units were advertised. We think this is unimportant. The property advertised as “a certain portion of ground” and the lot numbers are mérely descriptive and amount to no more than an error in measurement.
Under the provisions of LSA-R.S. 47:-2181 and 2184 (being Sections 3 and 4 of *477 Act 140 of 1890 at the time of the adjudication) the tax purchaser takes the “entirety of the property intended to be assessed and sold”, “provided the property sold can be reasonably identified”, “regardless of any error in the dimensions or description”, and we are of the opinion that the property here intended to be assessed and sold was Mrs. Bennett’s lots 9 through 17, and that same can be identified by the accurate description in her assessment and by the fact that she owned no other property in the subdivision.
Being also of the opinion that the decision of the Supreme Court in Landry v. McWilliams, supra, completely disposes of the present matter in favor of the validity of the tax adjudication to the State, the judgment of the District Court is affirmed.
Affirmed.