*244
 
 McCALEB, Justice.
 

 This is a mandamus proceeding in which • the duly appointed deputies of the Criminal Sheriff-of the Parish of Orleans (115 in number) seek an order commanding the city of New Orleans and the members of its Commission Council to adopt an amended budget of expenditures for the year 1946 so as to include therein sufficient funds for the payment of their salaries, as required by Act No. 294 of 1946, for a period of five months from August 1 to December 31, 1946 and to budget and appropriate the sum of $220,840 yearly, for the payment of their salaries for subsequent years, in accordance with the provisions of Act No. 294 of 1946 and Section 2 of Act No. 32 of 1902, as amended by Act No. 128 of 1910.
 

 The sole defense to the suit is that Act No. 294 of 1946 is unconstitutional for the following reasons:
 

 (1) That the statute, which effects a change in the salaries of relators, as fixed by law, did not receive a favorable vote of two-thirds of the members of each House as required by Section 34 of Article III of the Constitution of 1921, and
 

 (2) That Act No. 294 is a local or special law and, as such, is violative of Section 6 of Article IY of the Constitution in that no publication of notice of intention to apply for its passage was given.
 

 After a hearing in the District Court, the constitutionality of Act No. 294 of 1946 was upheld and, accordingly, the alternative writ of mandamus which had been previously issued by the Court was made peremptory. The respondents have, prosecuted this appeal from the adverse decision.
 

 We first address our attention to the-contention of respondents that Act No. 294 of 1946 is violative of Section 34 of Article III of the Constitution because it received' only 58 votes in the House, whereas, 67 votes would be required — if a vote of two-thirds of the members of each House was-necessary. The record shows that the bill received 58 votes for and 20 votes against on final passage in the House of Representatives and 27 votes for and 4 votes against in the Senate. Thus, the bill received more-than two-thirds of the votes of the members-elected to the- Senate but did not have the approval of two-thirds of the elected membership of the House of Representatives. It, however, received a two-thirds vote of the members present in the House on the-day that the act was presented for final passage.
 

 Section 34 of Article III of the Constitution reads at follows: “Salaries of public officers, whether fixed in this Constitution or otherwise, may be
 
 changed
 
 by vote of two-thirds of the members of each House of the Legislature”. (Italics ours.)
 

 We have italicized the word “changed” in. the above-quoted section because counsel for the relators maintain, at the outset, that the provision is without application here for the reason that the Legislature did not change the salaries of relators as their salaries were not fixed by law at the time
 
 *246
 
 tlic Act was adopted and that the real purpose of the statute is to fix with certainty the number and the salaries of the deputy criminal sheriffs of the Parish of Orleans.
 

 In view of the foregoing proposition, it is of immediate importance that we determine whether the statute effected a salary change ■ — for, if it did not, Section 34 of Article III of the Constitution is without bearing in the case.
 

 The authority of the Legislature to fix the salaries of the deputy criminal sheriffs of the Parish of Orleans is derived from Section 88 of Article VII 'of the Constitution, the pertinent part of which declares:
 

 '“Until otherwise provided by the Legislature, the salaries of the following officers of the parish of Orleans and the City of New Orleans shall be as follows :
 

 “Clerk of the Criminal District Court, four thousand ($4,000) dollars per annum; Criminal Sheriff, five thousand ($5,000) dollars per annum, and each of his deputies not less than One Hundred ($100) dollars per month; * * * and all of which salaries, shall be payable as now or may be hereafter provided by law.”
 

 It is conceded that, at the time the Constitution of 1921 became operative, the salaries of the deputy criminal sheriffs were fixed and paid by the Commission Council of the City of New Orleans and continued to be fixed and paid by that body until the year 1928, when the Legislature, by Act No. 108, provided that the Criminal Sheriff of the Parish of Orleans would be entitled to appoint eighty-nine deputies at various salaries which were fixed in the statute and that the salaries be paid by the City of New Orleans.
 

 After the passage of Act No. 108 of 1928, the City of New Orleans, taking the position that the statute was unconstitutional because it did not receive a two-thirds vote of the members of each House as required by Section 34 of Article III of the Constitution (the identical contention made by it in this case), refused to -appropriate the sum necessary to comply with the Act and the deputy sheriffs filed a mandamus proceeding similar to the instant suit in which they sought the same relief prayed for herein. See State ex rel. McKay et al. v. City of New Orleans, 171 La. 670, 131 So. 843. In that matter, this Court held that Section 34 of Article III of the Constitution was inapplicable for the reason that the Legislature had not previously established the salaries of the deputy criminal sheriffs; that their salaries had not been fixed in the Constitution and that the fixing of said salaries by the Commission Council of the City of New Orleans or by the Criminal Sheriff or by a board or local authority was not a “fixing as provided by law” which contemplated a legislative fixing. Accordingly, it was concluded that, since the salaries of the deputy criminal sheriffs established by the Commission Council could not be considered as a legal fixing of those salaries, Act No. 108 of 1928 did not effect a change in the salaries
 
 *248
 
 and, as a consequence, it was unnecessary that the statute receive a two-thirds vote of the members of each House as required by Section 34 of Article III of the Constitution.
 

 Act No. 108 of 1928 remained the law for only four years. It was specifically repealed by Act No. 114 of 1932, which provided: “That from and after the passage of this Act that the Commission Council of the City of New Orleans shall fix the salaries and number of the Deputy Criminal Sheriffs in the City of New Orleans, Parish of Orleans, provided that the salaries fixed shall be not less than eighty-seven and one-half per centum of the salaries as are now fixed by law, and provided further, that a sufficient sum of money be set aside in the annual budget and appropriated out of the general fund of the said City of New Orleans to provide for not less than eighty-nine assistants, clerks and deputies, to be employed monthly.”
 

 The above-quoted provisions produced the legal effect of “unfixing” the number and the salaries of the deputy criminal sheriffs previously established by Act No. 108 of 1928 and revested in the Commission Council of the City of New Orleans the right to fix the number and salaries of the deputies with the proviso, however, that the salaries to be established by the Commission Council should not be less than eighty-seven and one-half per cent of the amount fixed in Act No. 108 of 1928 and with the further proviso that the deputies should not be less than eighty-nine in number.
 

 Thus it is clear that, from and after the passage of Act No. 114 of 1932, until the enactment of Act No. 294 of 1946, the salaries of the deputy criminal sheriffs have been fixed by the City of New Orleans for, while it appears that Act No. 114 of 1932 was partially repealed by Act No. 27 of the Third Extra Session of 1934 and amended by Act No. 8 of the Extra Session of 1940, these subsequent changes in no way affected the Council’s discretion In fixing the amount of the deputies’ salaries.
 

 Counsel for relators, in stressing that Section 34 of Article III of the Constitution is without pertinence to the validity of Act No. 294 of 1946, rely upon the decision in State ex rel. McKay v. City of New Orleans, supra, which they say cannot be successfully distinguished from the case at bar.
 

 On the other hand, the City Attorney claims that the McKay case cannot be regarded as authority against the proposition that Act No. 294 of 1946 effected a change in the salaries of the deputy criminal sheriffs and, therefore, required a two-thirds vote of the members of each House for its validity. He argues that the conclusion in the McKay case was founded solely on the ground that the Legislature, prior to the enactment of Act No. 108 of 1928, had never fixed the salaries of the deputy criminal sheriffs. And, pointing1 to certain language of the opinion in that matter, counsel proclaims that the Court reserved to the city the right to attack any statute which might
 
 *250
 
 subsequently change the salaries fixed in Act No. 108 of 1928 in the event such statute did not receive the vote required by Section 34 of Article III of the Constitution. The language of the opinion, which it is said authorizes the present attack upon Act No. 294 of 1946, reads as follows: “Hereafter, should there be any attempt to change the salaries of the deputy criminal sheriffs for the parish of Orleans by amendment to Act No. 108 of 1928, then there will be ample time and opportunity to consider and dispose of the other issues raised by respondent in this case.” See 171 La. at page 675, 131 So. at page 845.
 

 An analysis of the reasoning upon which the McKay case is predicated has convinced us that the decision presents a legal parallel to the case at bar. When the constitutionality of Act No. 108 of 1928 was attacked in the McKay case, the situation respecting a prior fixing of the salaries of the deputy criminal sheriffs was identical with the situation presented to us in this case — that is, the salaries of the deputy criminal sheriffs had been fixed, not by the Legislature, but by the Commission Council of the City of New Orleans. It was argued there that, since Section 88 of Article VII of the Constitution had provided that the salaries of each of the deputy criminal sheriffs be not less than $100 per month, such minimum constituted a fixing of the salaries which could not be changed except by a strict compliance with Section 34 of Article III. The Court found, however, that the fixing in the Constitution of a minimum monthly salary to each deputy was not an actual fixing with stability and certainty of the salaries of each deputy criminal sheriff and that, therefore, when the Legislature (in Act No. 108 of 1928) fixed the salary of each deputy at a certain amount, it was not a legislative change in salary but a fixing of salary. It was further argued that, since the salaries had been established with exactness by the Commission Council of New Orleans, any change in that fixing by the Legislature constituted a change and not a fixing. But the Court specifically held that that contention was not well founded stating that the word “otherwise” as used in Section 34 of Article III of the Constitution relating to the change of salaries “fixed in this Constitution or otherwise” meant a statutory fixing of the salary and not a fixing by an officer or public board or a municipality.
 

 The City Attorney, however, insists that the legal situation relative to the salaries of the deputy criminal sheriffs presented to the Court in the McKay case is not at all comparable to the circumstances pertaining in the case at bar; that the opinion in the McKay case is based solely on the ground that there had never been a previous fixing of salaries, whereas, in the instant case, we are confronted with the fact that Act No. 108 of 1928 was a salary fixing statute and that, therefore, any subsequent legislation providing for salaries different from those
 
 *252
 
 designated in the 1928 statute, necessarily constituted a salary change.
 

 We quite agree with the City Attorney that any repeal of Act No. 108 of 1928, coupled with the enactment of another statute “fixing” the salaries of the deputy criminal sheriffs at amounts different from those established in the 1928 act, would unquestionably effect a legislative change in salaries within the contemplation of Section 34 of Article III of the Constitution. And we are further of the opinion that, when the' Legislature, by Act No. 114 of 1932, specifically repealed the 1928 act and relinquished its right to fix the salaries of these officers to the Commission Council of the City of New Orleans, such action on its part produced a change in the salaries fixed by the 1928 act. But it does not follow that, because the salaries were changed by Act No. 114 of 1932, the subsequent legislation now under attack (Act No. 294 of 1946) is a salary changing statute rather than a legislative fixing of salaries.
 

 - It must be borne in mind that we are not here concerned with the constitutionality of Act No. 114 of 1932. That act has not been assailed and it is presumably valid in every respect. As above indicated, the result of the repeal of the 1928 act and the passage of the 1932 act was to “unfix” the salaries of the deputy criminal sheriffs and restore the legal situation which was in effect prior to the passage of the 1928 act — that is, that the City of New Orleans was revested with the authority and discretion to fix the salaries of the deputy' criminal sheriffs with the proviso, however, that the salaries to be fixed by the Commission Council should not be less than eighty-seven and one-half percent of the salaries established in the act of 1928. This proviso, obliging the city to pay no less than eighty-seven and one-half percent of the salaries fixed in the 1928 act, did not constitute a legislative fixing of salaries as pointed out by the opinion in the McKay case (see 171 La. 670 at page 674, 131 So. 843). Hence, after the passage of Act No. 114 of 1932, the salaries of the relators were unstable and not fixed insofar as the legislature was concerned and they remained in this status until that body, acting pursuant to the authority given it by Section 88 of Article VII of the Constitution, undertook again to take the matter in hand and fix the salaries in Act No. 294 of 1946.
 

 Accordingly, Act No. 294 of 1946 does not effect a change in salaries which had been stabilized under a law in existence at the time of its passage. Conversely, the statute fixed salaries which, prior to the passage of the Act, were uncertain in that the amounts thereof were left to the discretion of the City of New Orleans.
 

 Since we view Act No. 294 of 1946 as a salary fixing statute rather than an enactment effecting a salary change, the provisions of Section 34 of Article III of the Constitution are clearly inapplicable and the legislation, having received an affirmative vote of a majority of the members of each House, is valid.
 

 
 *254
 
 Finally, respondents assail the constitutionality of Act No. 294 of 1946 on the ground that it is a local or special law and that notice of intention to apply for its passage was not published as required by Section 6 of Article IV of the Constitution. In proclaiming that an act fixing the salaries and the number of deputies, assistants, etc., of the Criminal Sheriff of the Parish of Orleans is a local or special law, the City Attorney asserts that there is no vital statewide concern as to the salaries of these officers. It is argued that, since the City of New Orleans must pay the salaries, the people of that city are alone concerned and that the people of the state are not interested.
 

 We perceive little merit in the contention. The Criminal Sheriff of the Parish of Orleans and his deputies are constitutional officers. See Sections 85, 88 and 89 of Article VII of the Constitution. The Criminal Sheriff, by Section 85 of Article VII, is required to assign a deputy sheriff to each of the five sections of the Criminal District Court to act as criers of that Court. The Criminal' Sheriff and his deputies have charge of the parish jail and are required to perform numerous other duties pertaining to law enforcement. In truth, they are arms of the law.
 

 The fact that the deputies are paid by the City of New Orleans is of no moment in determining whether a law passed for the purpose of fixing their salaries is a local or.special law. The words "local” or “special” law as used-in Section 6 of Article IV of the Constitution have been declared in numerous cases to refer to such laws wherein private individuals are seeking some private advantage or advancement for the benefit of private persons or property within a certain locality. See State v. Dalon, 35 La.Ann. 1141, 1142; Williams v. Guerre, 182 La. 745, 162 So. 609; State ex rel. Porterie v. Smith, 184 La. 263, 166 So. 72 and State v. Cusimano, 187 La. 269, 174 So. 352.
 

 In State v. Dalon, supra, where Act No. 98 of 1880, which provided for and regulated the machinery necessary to put the Criminal District Court for' the Parish of Orleans in motion, was assailed on the ground that it was a local or special law which was not published as required by Article 48 of the Constitution of 1879 (which corresponds with Section 6 of Article IV of the present Constitution), the Court said: "The argument that a law which relates solely to the machinery of a court of justice having jurisdiction over the territory of one parish only, is a local or special law, because it does not operate throughout the State and all the parishes thereof, is perfectly preposterous, and so hollow that it cannot stand criticism.”
 

 The City Attorney attempts to distinguish the Dalon case from the matter at hand on the ground that “there is no analogy between the establishment of indispensable judicial machinery for the prevention and punishment of crime and the mere
 
 *256
 
 increase of deputy sheriffs’ salaries”. This argument, we think, overlooks the fact that the Criminal Sheriff and his deputies are indispensable and important adjuncts to law enforcement and the salaries which the deputies are paid for their work as officers of the law are necessarily interrelated with the proper and competent administration of justice.
 

 The judgment appealed from is affirmed.
 

 HAMITER and HAWTHORNE, JJ., concur in the decree.'