HAWTHORNE, Justice.
 

 In this suit plaintiffs are seeking to have annulled and set aside a tax sale, and to be recognized as the owners, of certain property in the Parish of Plaquemines, Louisiana.
 

 The property, which was situated within the Jefferson-Plaquemines Drainage District, was sold by the sheriff of the Parish of Plaquemines at tax sale on October 1, 1921, for the unpaid state, parish, and Jefferson-Plaquemines Drainage District taxes due for the year 1920, and was purchased by the Jefferson-Plaquemines Drainage District for $2,545.50, the amount of all taxes due including state, parish, levee, and drainage taxes of the Jefferson-Plaque-mines Drainage District. In the tax deed the property was declared to be that of L. A. Figale and was described as follows:
 

 “A certain tract of land situated on the right bank of the Mississippi River, and designated as 768.16/100 acres. Parcel of land in T. 15 S. R. 24 E. West of River.”
 

 The tax deed was duly recorded in the conveyance records of Plaquemines Parish, C. O. B. 56, Folio 764, on November 15, 1921.
 

 After trial on the merits plaintiffs’ demands were rejected and their suit dismissed, and they have appealed.
 

 It is appellants’ position that the tax sale is an absolute nullity for the reasons (1) that on the date of acquisition of the property the purchaser, Jefferson-Plaquemines Drainage District, had no right or authority to acquire property at tax sale; (2) in the alternative, that the description of the property set forth in the tax deed is so indefinite and uncertain that the property which the deed purports to convey cannot be reasonably identified; (3) in the alternative, that there was a dual assessment of the property. Further in the alternative, it is their position that, should this court hold the tax sale to be valid, they should be permitted to redeem the' property.
 

 The tax deed to the drainage district was recorded in the conveyance records of Plaquemines Parish on November 15, 1921. Suit to annul and set aside the tax sale was instituted by the plaintiffs on
 
 *112
 
 July 28, 1941, approximately 20 years later. Plaintiffs’ suit to annul the tax sale on the ground that the district was without right or authority to purchase property at tax sale may be barred by the constitutional peremption under the decision of this court in King v. Moresi, 223 La. 54, 64 So.2d 841, wherein we held that the defect of purchase by one prohibited to buy at tax sale could not be raised after the period of peremption. We shall, however, rest our opinion in the instant case on the ground that, if there did not exist at the time of purchase any power or authority for the drainage district to purchase property at tax sale, the Legislature subsequently by Acts 235 and 236 of 1936 ratified the purchase by the district by ratifying, quieting, and confirming its title.
 

 The Jefferson-Plaquemines Drainage District was organized pursuant to, and under the authority of, Act 317 of 1910. Section 29 of this act expressly gave a drainage district created pursuant to the terms and provisions of the act authority to purchase land sold at tax sale to enforce collection of taxes assessed against lands in the drainage district. Section 29 of the act was amended and revised by Section 14 of Act 227 of 1914, and in this amendment and revision the express authority to acquire property at tax sale on the part of the drainage district was omitted.
 

 Appellants state that the Jefferson-Plaquemines Drainage District is a creature of the Legislature and a political subdivision of this state and as such does not possess any power or authority except that expressly given by the Legislature, and they argue that, since in the amendment and revision of Section 29 by Section 14 of Act 227 of 1914 the power and authority to purchase at tax sale was omitted, the drainage district, defendant herein, had no right or authority to acquire this property at tax sale.
 

 It is not necessary for us to pass on or even discuss whether the drainage district had the power and authority in 1921 to acquire this property at tax sale, because that lack of authority was made immaterial in 1936 when the Legislature passed two acts which ratified, quieted, and confirmed as legal and valid title to property acquired by the drainage district at tax sale where the period of redemption provided for by the Constitution had expired or prior to January 1, 1931. Acts 235 and 236 of
 
 1936.
 

 Section 1 of Act 235 of 1936 reads as follows:
 

 “Section 1. Be it enacted by the Legislature of Louisiana, That the title to all lands located in the Jefferson and Plaquemines Drainage District which were purchased by the Jefferson and Plaquemines Drainage District at tax sales made by the Sheriffs and Ex-Officio Tax Collectors for the Parish of Plaquemines and/or Parish of Jefferson, for delinquent taxes due the State, Parish of Jefferson or Parish of Plaquemines, and any and all political
 
 *114
 
 subdivisions of the State or said Parishes, where said sales were made prior to January 1, 1931,
 
 be, and the same are, hereby ratified, quieted and confirmed as legal and valid."
 
 (All italics ours.)
 

 Section 2 of Act 236 of 1936 reads as follows:
 

 “Section 2. That where the Jefferson and Plaquemines Drainage District has acquired property located in the Drainage District, at tax sale made by the Sheriffs and Ex-Officio Tax Collectors of either the Parishes of Jefferson and Plaquemines, respectively, and the three-year period within which the property may be redeemed shall have expired, that
 
 it is the purpose and intent of this act that all rights, title and interest in and to said property be and are herewith ratified and confirmed unto said Jefferson and Plaquemines Drainage District,
 
 and the said Jefferson and Plaquemines Drainage District shall have the right to subdivide said lands thus purchased, and any other lands which it may acquire, into lots, parcels, plats and/or tracts, best suited to the sale and disposition of said land.”
 

 Both Act 235 and Act 236 of 1936 were treated by the Legislature as local or special laws, and each contained a recital of notice of intention to apply for the act’s, passage as required by Article 4, Section 6, of the Constitution. Appellants seek to avoid the effect of these acts by urging their unconstitutionality. They argue that the acts violate Article 4, Section 4, of the Constitution, which provides that the Legislature shall not pass any local or special laws legalizing unauthorized or invalid acts of any officer, servant, or agent of the state or of any parish or municipality thereof. The first question presented, then, is whether these acts are local or special laws.
 

 The fact that the Legislature complied with the requirement of notice, etc., for the enactment of local or special acts does not, of itself, make these statutes local or special laws if they were actually public or general laws. This court in numerous cases has had occasion to discuss the difference or distinction 'between public or general laws and local or special laws. State v. Dalon, 35 La.Ann. 1141; Benedict v. City of New Orleans, 115 La. 646, 39 So. 792; State v. Clement, 188 La. 923, 178 So. 493; Kotch v. Board of River Port Pilot Com’rs for Port of New Orleans, 209 La. 737, 25 So.2d 527; State ex rel. Grosch v. City of New Orleans, 211 La. 241, 29 So.2d 778, and authorities therein cited.
 

 The distinction between these two types of laws is made clear by the following extracts quoted from some of the cited cases:
 

 “Those are to be regarded as public acts which regulate the general interest of the State or of any of its divisions. * * *
 

 
 *116
 
 “The real distinction' between public or general laws and local or special laws is, that the former affect the community as a whole, whether throughout the State or one of its subdivisions; and the latter affect private persons, private property, private or local private interests.” State v. Dalon, supra.
 

 “General laws are such as ‘operate equally and uniformly upon all brought within the relations and circumstances for which it provides’ or ‘operate equally upon all of a designated class founded upon a reasonable and proper classification.’
 

 “A local or. special law is one which, because of its restrictions, can operate upon or affect only a portion of the citizens, a fraction of the property embraced within the classification created.” State v. Clement, supra [188 La. 923, 178 So.497].
 

 “ * * * The- test of whether a law is special or local is whether it operates only on a certain number of persons, within a class, but does not affect generally all persons within that class. * * * ” Kotch v. Board of River Port Pilot Com’r for Port of New Orleans et al., supra [209 La. 737, 25 So.2d 534].
 

 “ * * * The words ‘local’ or ‘special’ law as used in Section 6 of Article IV of the Constitution have been declared in numerous cases to refer to such laws wherein private individuals are seeking some private advantage or advancement for the benefit of private persons or property within a certain locality. * ' * State ex rel. Grosch v. City of New Orleans, supra [211 La. 241, 29 So.2d 783],
 

 Under these rules Acts 235 and 236 of 1936 are public or general acts. They regulate the general interest of a political subdivision of the state, are applicable to all whose lands'were sold to the district at tax sale, and operate equally and uniformly upon all brought -within the relations and circumstances for which they provide. They do not operate on a certain individual or person within a class, but do affect alii persons within that class, that is, those-whose property was acquired by the drainage district at tax sale. It cannot 'be said that these statutes were enacted for the benefit of private persons or property within; a certain locality, or for some private advantage or advancement for the benefit of private persons or property within a certain locality.
 

 Since we have concluded that the two-acts are public or general laws, then the-constitutional prohibition in Article 4, Section 4, dealing with local or special laws has-no application.
 

 We next come to the inadequacy of the description as a ground of absolute-nullity. Defendant-appellee contends that: this is barred as a ground of nullity by theperemptive' provision óf the Constitution under the well established and recognized! rule of law that, if the description of the property in the assessment or the tax deed,, although improper, is reasonably sufficient to identify the property or to ■ furnish the
 
 *118
 
 means for identification, the peremptive provision of the Constitution applies, and the tax sale is not subject to attack.
 

 There are numerous cases in our jurisprudence, some of which have been cited by appellee, which have recognized and applied the above rule of law. This court has held that even the State or one of its subdivisions may plead the peremption established by the Constitution in a suit to annul a tax sale instituted more than five years after recordation of the tax deed. See Westover Realty Co., Inc., v. State, 208 La. 163, 23 So.2d 33.
 

 The question for our consideration therefore is whether the description of the property as contained in the tax deed, quoted hereinabove, is so indefinite, improper, and inadequate that the property which the deed purports to convey cannot be reasonably identified. Errors as serious as these are not cured by the peremptive period.
 

 As stated in Federal Land Bank of New Orleans v. Hill, 170 La. 654, 129 So. 118, there exists under Article 10, Section 11, of our Constitution a legal presumption that the tax sale is valid. Moreover, Act 140 of 1890, Section 3, LSA-R.S. 47:2181, specifically provides:
 

 “No tax sale shall be set aside or annulled for any error in description or measurement of the property assessed in the name of the owner provided the property sold can be reasonably identified.- .-
 

 In the jurisprudence of this state it is well settled and established that, where a tax sale is made under, an assessment in the name of the owner and an error is made in the description of the land intended to be assessed, the tax sale under such assessment is valid if, notwithstanding the error in description, the land can be reasonably identified by the assessment or description as found in the tax deed, or if the description therein furnishes the means for such identification. Further, if a description of the property intended to be assessed or sold is so indefinite and uncertain as to be defective, resort may be had to evidence outside the assessment roll or tax deed to identify the property, provided such evidence establishes unmistakably the identity of the property. The cases generally hinge on the point as to whether the description is such as to enable interested persons to identify the property. Tillery v. Fuller, 190 La. 586, 182 So. 683, and the numerous authorities therein cited; Jackson v. Irion, 196 La. 728, 200 So. 18, 133 A.L.R. 566; Yuges Realty, Ltd., v. Jefferson Parish Developers, Inc., 205 La. 1033, 18 So.2d 607.
 

 With the foregoing rules in mind, let us examine the tax deed itself and all other evidence adduced outside the deed to determine whether the deed furnishes a means of reasonable identification, or, if not, whether the evidence adduced outside the deed unmistakably establishes the identity of .the property. . ...
 

 
 *120
 
 The deed recites that the property was owned by L. A. Figale, was situated on the right bank of the Mississippi River in T. 15 S., R. 24 E., west of River, and contained 768.16 acres. According to the 1920 assessment roll for the Parish of Plaque-mines, the property described in the deed was assessed as being situated in Ward 6 of that parish, and was assessed in the name of L. A. Figale, who according to this assessment roll owned no other property in Ward 6 of that parish.
 

 In 1914 Cyrus A. Barker, who plaintiffs claim is their author in title and from whom they claim, acquired the land by deed in which the description of the property was given substantially as in the tax deed, with the exception that the deed to Barker made reference to the property as being “according to the official plat of the survey of said land in the State Land Office, as per patent No. 3073 on September 26, 1878, and recorded in Volume 19, page 298 in the Land Office at Baton Rouge”.
 

 In June, 1917, L.- €.■ Spencer acquired the property at tax sale by a deed which described the property substantially as it was described in the deed to Barker, and clearly and unmistakably described the property acquired by Barker. Barker redeemed the property from Spencer by act of redemption dated July 1, 1919, under the same description.
 

 On September 13, 1919, the property, assessed in the name' of L. C. Spencer, was sold at tax sale for the 1918 taxes, and was purchased by L. A. Figallo. The description in that deed read as follows:
 

 “The property of L. C. Spencer. A certain tract of land situated on the right bank of the Mississippi River and designated as parcel of land in T. 15 S. R. 24 E.”
 

 In 1920 Barker for the second time redeemed the land. In this act of redemption to Barker from Figallo, the purchaser at the 1919 tax sale in which the property was sold in the name of L. C. Spencer, the property was described as:
 

 “A certain tract of land situated on the right bank of the Mississippi River and designated as parcel of land in T, 15 S. R. 24 E.”
 

 L. C. Spencer was made a party to this act of redemption and declared therein that Barker had previously redeemed the land there described from him. This declaration of Spencer came about as a result of his acquisition of the property at tax sale in 1917, which, as stated by him, had been previously redeemed by Barker in 1919.
 

 As pointed out above, the description in the tax sale to Spencer, as well as in the act of redemption, clearly and unmistakably covered and included the property acquired by Barker in 1914, as the description given in these two instruments was full and complete.
 

 By virtue of the substantial agreement of the details of the descriptions, the property described in. the tax deed to Figallo
 
 *122
 
 and redeemed by Barker is obviously the same property purchased by Spencer at tax sale and redeemed by Barker from him, and equally obviously is the same property acquired by Barker in 1914.
 

 The description given in the tax deed which is here under attack, and under which the drainage district acquired the property, is almost identical with that contained in the tax deed to Figallo, except that the description in the tax deed under attack contains the additional descriptive details: "768.16/100 acres” and “West of River”. This description, it is true, makes no reference to the official plat of survey as per patent in the State Land Office, as did Barker’s deed of acquisition, but this omission is not fatal, as is demonstrated by the fact that Barker redeemed the property in 1920 from Figallo, who had purchased by tax deed which did not contain these data.
 

 The description in the tax deed, therefore, when considered with the other relevant evidence, is sufficient to identify unmistakably the property sold at the tax sale in 1921 as the same property described in the 1914 deed to Barker, who the plaintiffs claim is their author in title and from whom they claim.
 

 Appellants also claim that there was a dual assessment of the property acquired by the district at tax sale, and that the tax deed of acquisition therefore is an absolute nullity. The basis of this argument is the provision of Article 233 of the Constitution of 1913 which permitted a sale of property for taxes to be set aside on proof of dual assessment. This provision is omitted from the 1921 Constitution. Appellants contend that the 1913 Constitution is applicable to the instant case because the property was sold under a 1920 assessment made before the 1921 Constitution went into effect, although the actual tax sale took place on October 1, 1921, after the 1921 Constitution became effective. The record in the instant case shows assessment of the property for parish, for state, and for drainage district taxes, but none of these taxes was assessed twice. The fact that the assessments were not all made in the name of Figale is explained by the fact that Barker had redeemed the property in the year of the assessment. There is no showing of dual assessment of the property, therefore, and it is unnecessary for us to determine which Constitution is applicable.
 

 In the further alternative, appellants argue that, even if the tax sale is not a nullity and subject to be set aside, they have a right to redeem the property under LSA-R.S. 47:2224, which permits redemption of lands bid in for, and adjudicated to, the State as long as title is in the State or in any of its political subdivisions. The ap-, pellee argues that there is a distinction between lands forfeited to the State for want of a purchaser and lands adjudicated to a subdivision which pays
 
 all
 
 taxes owing on the property, and that the State
 
 *124
 
 ■does not intend for the latter to be redeemed after the redemptive period. Appellee argues also that Acts 235 and 236 of 1936 show that the Legislature intended to quiet and confirm title in the district and thus foreclose any further right of redemption, that it is inconsistent to allow redemption of land to which the title has been quieted and confirmed in the drainage district, and that this court should give effect to the plain intent of the 1936 acts.
 

 We agree that LSA-R.S. 47:2224, which gives the right of redemption, is without application in the instant case, inasmuch as the Legislature by Acts 235 and 236 of 1936 ratified, quieted, and confirmed as legal and valid the title acquired by the drainage district by virtue of this tax sale. -Each of these acts confirmed and quieted the title of the district to all property acquired by virtue of such tax sales where the period of redemption as provided for in the Constitution had expired, one of them specifying sales “made prior to January 1, 1931”, and the other specifying sales made where “the three-year period within which the property may be redeemed shall have expired”. It is obvious from this language that the Legislature was cognizant of the right of redemption as fixed in the Constitution, and that by confirming as legal and valid the title to lands acquired at tax sale where the constitutional right of redemption had expired it intended that thereafter the tax debtor could not redeem the property. Moreover,, the. district in Section 5 of Act 236 was given the power and authority to rent or lease such property. See State ex rel. California Company v. Jefferson & Plaquemines Drainage Dist., 194 La. 312, 193 So. 657. The power to lease carries with it the obligation on the part of the lessor to maintain the lessee in the peaceful possession of the thing during the continuance of the lease. Civil Code, Art. 2692. This obligation could not be complied with if the property were subject to redemption under LSA-R.S. 47:2224, and the power to lease given in the act would be meaningless and without effect.
 

 For the reasons assigned, the judgment appealed from is affirmed at appellants’ costs.