REID, Judge.
This suit was instituted in May of 1958 under the provisions of Act 38 of 1908, as a statutory action to establish title to certain tracts of land in Section 28, T 20 S, R 22 E, Lafourche Parish, Louisiana. This suit is a companion suit to Van Norden et al. v. Swamplands, Inc., et al., La.App., 149 So. 2d 696, a suit to establish title to certain lands in Section 33, T 20 S, R 22 E. La-fourche Parish, Louisiana, the two suits having been consolidated for purposes of trial and in connection with this appeal. Because the law involved in the two cases is exactly the same and the factual situations are almost identical, and because the Trial Judge made no distinction between the two cases in his reasons for judgment, this opinion will cover the issues involved in both cases as though they were one.
The plaintiffs assert title to the property in dispute as the heirs and successors in title of Warner Van Norden who acquired the property by patents from the State of Louisiana in 1871. The plaintiffs in both suits are the same, with the exception that David J. Robichaux is not a party to the companion suit of Van Norden et al. v. Swamplands, Inc., et al. The defendants in this suit are twenty-four individuals alleged to be claiming title adversely under a consent judgment rendered in the matter entitled “Howard E. Werigny, et al v. Julian Guidry, Sr., et al” No. 10,471 of the docket of the 17th Judicial District Court, or under a deed from LaTerre Co., Inc. to Julian Guidry, Sr., dated July 5, 1949. The same twenty-four individuals are parties to the companion suit against Swamplands, Inc., et al., together with the Louisiana Land & Exploration Company (substituted for *686 Swamplands, Inc., since dismissed from the suit; the twenty-four individuals claim title under the same consent judgment mentioned above, while the said Louisiana Land & Exploration Company asserts adverse title by mesne conveyances from a tax adjudication to the State in 1894, for non-payment of taxes assessed against Warner Van Nor-den, the original patentee in 1893. After the trial of the case, A. Miles Coe one of the plaintiffs died and his heirs were substituted as parties plaintiff, as appears by motion filed with the Court.
Various preliminary pleadings filed by the various defendants in both suits were disposed of by decision or referral to the merits, including exceptions of want of possession and prescription of thirty years, and an exception based on acquisitive prescription of ten years filed by the Louisiana Land & Exploration Company in the companion suit. To these pleas of prescription plaintiffs filed a plea of equitable es-toppel and on April 21, 1961 plaintiffs filed a motion for summary judgment against all defendants except Louisiana Land & Exploration Company. The defendants in this and in the companion suit filed answers and set out their chain of title, asserting the validity of the 1894 tax adjudication and reaffirming the defenses set up in the pleas of prescription. The District Court, by order rendered May 13, 1960, referred the plea of equitable estoppel to- the merits, recognizing that the prescriptive claims, alternatively asserted by the defendants and the argument of the plaintiffs that the defendants were estopped to assert them, were based on issues which could only be determined after a trial on the merits.
Approximately a week or ten days before the trial of the case on the merits on May 8, 1961, the Trial Judge held a pre-trial conference in order to clarify the issues, the result of which is set forth in the Trial Judge’s reasons for judgment as follows:
“ * * * At the conference, the Court took note of the fact that, in view of the adoption of the new Code of Civil Procedure, particularly Article 3651 thereof, plaintiffs’ suits had been converted into a petitory action, with the result that, under Article 3653, plaintiffs, in order to sustain the action, were at least required to prove a better title to the property than those asserted by the defendants. This being so, the question of the validity or invalidity of the 1894 tax adjudication became, initially, the crucial issue before the Court, inasmuch as a confirmation of the validity of the adjudication necessarily resulted in divesiture of plaintiffs’ title, and defeated their right to maintain the petitory action.
“Mindful of these principles, the Court ruled that the validity or invalidity of the 1894 tax adjudication would be determined preliminarily, and the cases consolidated accordingly went to trial on that limited issue on April 8, 1961.
“The documentary evidence submitted on the trial, and the testimony of the witnesses, dealt with the legal issues inherent in determining the validity vel non of the 1894 tax adjudication. * * * ”
The Court, on the day of the trial of the case on the merits, denied the plaintiffs’ motion for summary judgment and based his opinion on the fact that the defendants should be given their day in Court, which was apparently in accord with the agreement reached in the pre-trial conference, though the record is not entirely clear on this point.
On the day of the trial the plaintiffs attempted to enter preliminary defaults against various defendants who had not filed answers in this case. However, there is no judgment in the record wherein the said defaults were confirmed.
On November 16, 1961 the Trial Judge rendered judgment against the plaintiffs and in favor of all defendants, including those defendants against whom the plaintiffs had entered preliminary defaults, and dismissed both suits at plaintiffs’ cost. It is from this decision that the plaintiffs have appealed.
*687 The plaintiffs in this appeal asserted various allegations of error which were primarily directed to three issues: (1) defendants’ plea of prescription and possession should have been overruled and plaintiffs’ plea of equitable estoppel maintained and this issue should have been determined prior to a determination of the validity of the tax sale on the merits; (2) that plaintiffs’ motion for summary judgment should have been sustained and judgment rendered accordingly, which said action should also have been determined prior to determination of the question raised on the merits; and (3) that upon the merits a judgment should have been rendered in favor of the plaintiffs, recognizing the invalidity of the tax adjudication and of the defendants’ lack of prescription. The plaintiffs also alleged the District Court erred in dismissing the suit as to those defendants who made no appearance and against whom plaintiffs had “confirmed defaults.”
As to whether or not the defendants’ pleas of prescription and possession should have been overruled, and as to whether or not plaintiffs plea of equitable estoppel and motion for summary judgment should have been maintained, it is clear from the record that there had been an agreement among all parties to the effect that the question of the validity of the tax sale of 1894 would first be passed upon, prior to the determination of any other issue.
Counsel for all defendants in their brief clearly indicate that it was their understanding the validity of the tax sale was the sole issue before the Court and as a result they had not introduced evidence in rebuttal to plaintiffs’ plea of equitable estop-pel and motion for summary judgment. It is clear from reading the quoted portion of the Trial Judge’s reasons for judgment that the procedure taken by the Trial Judge was taken with the understanding and agreement of all parties. It would certainly be most unfair at this time if this Court changed the ground rules set by the Trial Court in the pre-trial conference and passed upon questions which were not before the Trial Court and which were neither tried nor briefed by defendants nor passed upon by the Trial Judge. For this reason, it is not necessary for this Court to go into the question as to whether or not under Article 2164 of the LSA-Code of Civil Procedure this Court has the authority to pass on these questions without remanding the case to the District Court for trial.
In passing, we point out that insofar as the plaintiffs’ contention that the Trial Judge erred in dismissing the suit as to those parties against whom plaintiffs alleged they had confirmed defaults, an examination of the record fails to disclose a judgment of confirmation, there merely being a statement in the transcript of testimony by counsel for plaintiffs that he wanted confirmation against said defendants to be entered. It would follow if the evidence taken at the trial was not sufficient to establish plaintiffs’ contention the tax sale was null and void, it would not be sufficient to prove up a default judgment.
With regard to the central issue at hand, that is, the question as to whether or not the tax adjudication of 1894 is valid, plaintiffs make two basic allegations of error. The first deals with the holding of the Court that the defendants in this case were not bound by a judgment obtained by the plaintiffs in a prior proceeding in the matter entitled “State of Louisiana, ex rel. Warner M. Van Norden, et al. vs. Register, State Land Office,” No. 58,629 on the docket of the 19th Judicial District Court for the Parish of East Baton Rouge, which suit resulted in a judgment commanding the Register of the State Land Office, and, through her offices, the Recorder of Conveyances for the Parish of Lafourche, to cancel from their respective records the inscription of the 1894 tax adjudication. The second allegation of error deals with whether or not the District Judge was correct in holding the description in the tax adjudication of 1894 was adequate to sufficiently identify the property and thus legally divest plaintiffs’ ancestor» in title of title to the tracts in *688 question, it being the contention of the plaintiffs that the assessment, advertisement and adjudication to the State were invalid because the said property assessed, advertised and adjudicated could not be reasonably identified and the want of such identifiable description in the assessment, advertisement for sale or tax title is fatal thereto.
The plaintiffs filed the said suit against the Register of the State Land Office prior to the filing of this suit, and in the former action they sought to have the tax adjudication in question cancelled from the Conveyance Records of the Parish of Lafourche. This action was taken by the plaintiffs under Act 170 of 1898, as amended, now LSA-R.S. 47:1991, which reads as follows:
“Upon a statement of the facts made under oath, verified and approved by the assessor and collector of the parish or district in which the property is situated, that the assessment is a clerical error, or an erroneous or double assessment, or that the property is exempt by the constitution from taxation, the affidavit being accompanied by the rendition made by the taxpayer on such property for the current year, the tax commission may authorize and direct the collector to cancel the assessment on the .roll on file in his office. When such notification is issued, a copy shall be furnished to the auditor who shall authorize and direct the recorder of mortgages to erase and cancel the inscription of the tax mortgage. If the property erroneously assessed be owned by the state or any of its agencies or political subdivisions, including any town or municipality, it shall not be necessary to secure the verification and approval of the assessor and the collector of the parish or district, but a statement of the facts by an authorized officer, under oath, shall be sufficient. In case property erroneously assessed has been sold for taxes and adjudicated to a third party, the auditor shall authorize and direct the recorder of mortgages to cancel the sale. In case, however, the property has been bid in for adjudication to the state, the Register of the State Land Office shall cancel the sale upon his records and direct the recorder of mortgages to cancel the act or deed of adjudication upon his records. All costs and fees entailed by the erroneous or double assessment shall be deducted from the amount coming to the assessor upon any settlement made with him by the state for his compensation.”
Accordingly, pursuant to LSA-R.S. 47:-1991, plaintiffs made demand upon the Register to cancel said adjudication from her records and the Clerk of Court to cancel the said adjudication to the State, and upon refusal of the Register to comply with said demand, plaintiffs filed the aforesaid petition for a writ of mandamus on December 3, 1956, praying that the Register be directed to cancel and erase from the records of her office the subject tax adjudication and to instruct the Recorder of Conveyances for the Parish of Lafourche to cancel the adjudication from his records.
The Register of the State Land Office was represented at the trial by the Attorney General of the State of Louisiana and the matter was submitted for such judgment as the District Court deemed proper and warranted in the premises.
None of the defendants in either this suit or the companion suit were parties to the Baton Rouge suit and in fact the defendant Louisiana Land & Exploration Company introduced evidence on the trial of this case to the effect that it had no knowledge of those proceedings. The 19th Judicial District Court rendered judgment in favor of the plaintiffs and against the Register of the State Land Office making peremptory the plaintiffs’ application for writ of mandamus and commanding the Register of the State Land Office, and through her offices the Recorder of Conveyances for the Parish of Lafourche, to cancel from their respective records the inscription of the 1894 tax adjudication. The Trial Judge in the 19th *689 Judicial District Court, in written reasons for judgment, stated:
“It is well-settled that without a proper levy a tax collector is without right to sell property, so that under the provisions of Act 85 of 1888, Sections 7 and 18, and Article 233 of the Constitution of the State of Louisiana for the year 1898 (both effective at the date of this alleged adjudication) an insufficient description of property makes void ab initio the sale thereof. To have a valid tax sale there must, of necessity, be a valid assessment and it is obvious that without giving the township and range there was, in fact, no assessment and a tax sale under such assessment is void ab initio.”
The Trial Judge in this case took the position that as the judgment rendered by the 19th Judicial District Court had not been appealed, it was therefore final, and if he was required to give it effect against these defendants, it would follow that the question before him, namely, the validity of the 1894 tax adjudication would have already been resolved in the plaintiffs’ favor. The plaintiffs urged that the judgment, being final and definitive, should have received full faith and credit as accorded all definitive judgments by the law, and that the Trial Court herein should have recognized the said judgment.
It should be pointed out that the record shows that the land in question, which was adjudicated to the State under assessment to Warner Van Norden on June 23, 1894 was transferred by the State to the Atcha-falaya Basin Levee District on August 10, 1895 and that the State had only held title for approximately a year, having divested itself of title more than sixty years prior to the time the suit in the 19th Judicial District Court was filed.
To the contention of plaintiffs’ that the judgment of the 19th Judicial District Court should have been given full faith and credit defendants contend first, under the Constitution and the laws of the State of Louisiana, the judgment could have no effect as to persons not parties to the suit, and second, any action authorized by the statute relied upon was barred by the constitutional peremption of five years set forth in Article 10, Section 11 of the LSA-Constitution.
In his reasons for judgment, the Trial Judge commented upon this phase of the case thus:
“Irrespective of the applicability of the procedure which the plaintiffs invoked in the Baton Rouge Court, or of the result to which that procedure led, we conclude that these defendants are not bound by the judgment. The problem, in final analysis, is one of due process, and the principles of law applicable are well stated in Postal Telegraph-Cable Company v. City of Newport, 247 U.S. 464, 626 [38 S.Ct. 566, 62 L.] Ed. 1215 cited in defendant L. L, & E.’s brief, where the Supreme Court, considering the effect of a prior judgment in a case similar to that presented here, said:
“ ‘The ground upon which, and upon which alone, a judgment against a prior owner is held conclusive against his successor in interest, is that the estoppel .runs with the property, that the grantor can transfer no better right or title that he himself has, and that the grantee takes cum onere. From this it follows that nothing which the grantor can do or suffer after he has parted with the title can affect rights previously vested in the grantee, for there is no longer privity between them.’
“An even more practical statement of the same rule is found in the case of Dull v. Blackman, 169 U.S. 243 [18 S. Ct. 333], 42 L.Ed. 733, where the Court recognized that,
“ ‘ * * * No grantee can be bound by any judgment in an action commenced against his grantor subsequent to the grant, otherzvise a man having no interest in property could *690 defeat the estate of the true owner. * * * ’ (Emphasis by Trial Court)
“The Louisiana Supreme Court accepted and applied the rule in the case of Bell v. Canal Bank & Trust Co., 193 La. 142, 190 So. 309 [359], where a judgment annulling a tax sale on grounds of fraud was rejected as having any effect on the successors in interest of the tax purchaser.
“In answer to this argument plaintiffs cite the case of Quaker Realty Co., Ltd. v. Purcell, 134 La. 1022, 64 So. 894. That case involved the rights of a tax debtor, whose lands had been adjudicated for delinquent taxes, and thereafter sold by the State at auction. The Court merely recognized that since The Constitutional peremption had run, thus divesting the title irrevocably, the former owner was without interest to question the State’s disposition of the property. We are here concerned with the rights of a transferee of the State, claiming an outstanding interest at the time of rendition of the judgment complained of. The decision is inapposite to these facts.
“The rule announced in the Supreme Court cases, and followed in Bell v. Canal Bank & Trust Co. is binding upon this Court. Its application to the facts presented here leads to the conclusion that the Baton Rouge judgment is without effect as to these defendants, and thus requires our independent consideration of the validity of the 1894 adjudication.
“Brief consideration of the substantive objections raised by defendants to the procedure invoked in that case will place in perspective the issue which we must finally determine.
“The defendants argue that there was no remedy available to plaintiffs under R.S. 47:1991, because any defects which would have been subject to correction by that procedure were cured by the mandatory peremption provided by Article 10, Section 11, of the present Constitution. That section of the Constitution provides that,
“ ‘No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted within six months from service of notice of sale, which notice shall not be served until the time of redemption shall have expired and within five years from the date of the recordation of the tax deed, if no notice is given.’
“Defendants say that after passage of the prescribed period of time, (and there is no question that the time has run), proof of prepayment of the taxes is the only available ground for setting aside the sale, and that plaintiffs cannot accomplish indirectly what the Constitution prohibits, by attacking the assessment (and the sale) under a statute providing for the cancellation of double or erroneous assessments.
“We agree that, since the passage of the 1921 Constitution, any attack on this tax adjudication, on the grounds enumerated in R.S. 47:1991, is barred. J|i % sfs »
This Court feels that the Trial Judge’s conclusions that the defendants in this case were not bound by the judgment of the 19th Judicial District Court and said judgment should not be recognized and given full faith and credit, is correct and that his reasons for so finding are in accordance with both the United States and Louisiana Constitutional provisions and the jurisprudence.
The next question for consideration, and which is the main point at issue, is whether the description of the property as contained in the assessment is so defective as to fail to identify the property and thus constitute no assessment whatsoever, and thus is not sufficient under the law to serve as a basis for transfer of title.
*691 The record discloses that on November 20, 1871, patents No. 901 and No. 902 were issued by the State of Louisiana to W. Van Norden for the following property, to-wit:
Patent Number 901: Lots 4 and 5 of Section 17 and Lots 4 and 6 of Section 21, T 20 S, R 22 E, containing 183.50 acres (C.B. 16, Folio 9)
Patent Number 902: Lots 2, 3, 6, and 7 of Section 28 and Lots 2, 3, and 6 of
Section 33 in T 20, S, R 22 E, containing 292.88 acres. (C.B. 16, Folio 10.)
These patents are filed in the record as Martin Exhibits 1-A and 1-B. The patents were recorded in the conveyance records of the Parish of Lafourche on September 8, 1874.
The property appeared on the assessment records for the Parish of Lafourche for the year 1876 as follows:
“1721 Van Norden W. 292.88 (acres) Lots 2, 3, 6, and 7, Section 28 and Lots 2, 3,-and 6 of Section 33 and
“1722 Van Norden W. 183.50 (acres) Lots 4 and 5, Section 17 and Lots 4 and 6 Section 21 T 20 S, R 22 E.”
The word “and” was dropped from the assessment after 1876 and does not appear in later assessments through 1894.
The assessments from the year 1876 through 1894 appear as Exhibits M-3 through M-20. The assessment for the year 1893 reads as follows:
“3368 Van Norden W. 292.88 (acres) Lots 2, 3, 6, and 7, Section 28 and Lots 2, 3, and 6, Section 33
“3369 Van Norden W. 183.50 (acres) Lots 4 and 5 Section 17 and Lots 4 and 6 Section 21 T 20S-R22E.”
The procés verbal of the 1894 adjudication should a transfer to the State under the following description:
“W. Van Norden
“292 acres, Lots 2, 3, and 6 Section 33
“W. Van Norden
“183 acres, Lots 4 and 5, Sec. 17 Lots 4 and 6, Sec. 21, T 20S-R22E.”
The adjudication is recorded in COB 28, page 154 of the Conveyance Records of Lafourche Parish, certified copy of which appears on page 1691 of the transcript of this record.
The 1894 weekly Thibodaux Sentinel carried the advertisement of the property adjudicated with the same description as con-, tained in the assessment for the year 1893,
It is this adjudication and assessment which is under attack in both the case at issue and in the companion case. In the case at issue it is the adjudication of property in Section 28 which is under attack, and in the companion case of Van Norden et al. v. Swamplands, Inc. et al. it is the adjudication of property in Section 33 that is under attack.
It is the position of the plaintiffs that without the Township and Range being given in the tax assessment and advertisement there was no valid assessment and advertisement because the property was not reasonably identified, and with no valid assessment and advertisement there could be no valid adjudication of the property in Section 28, T 20 S, R 22 E, involved in this, case, and in Section 33, T 20 S, R 22 E, involved in the companion suit. Plaintiffs further contend that their attack against the adjudication to the State of Lots 2, 3, 6 and 7 of Section 28, which is involved-in this case, is even stronger in that no mention whatsoever was made of any property in Section 28 in said adjudication to the State.
It is clear from the jurisprudence, that where the description in an assessment _ *692 is so defective as to fail to identify the property and thus, in effect, constitutes no assessment at all, an attack upon such adjudication made pursuant to such assessment is not barred by the constitutional peremption of Article 10, Section 11. See Weber’s Heirs v. Martinez, 125 La. 663, 51 So. 679, and Knapp v. Jefferson-Plaquemines Drainage District, 224 La. 105, 68 So, 2d 774, wherein the Court held that errors as serious as these are not cured by the peremptive prescription.
The law applicable to the question as to whether or not the assessment was sufficient under the law to serve as a basis for the transfer of title, is found in Act 140 of 1890, the governing statute at the date of the assessment and at the date of the adjudication, as follows:
“Section 1. Be it enacted by the General Assembly of the State of Louisiana, That for the purposes of taxation and tax sales it shall be sufficient to assess and describe all property according to such a description as will reasonably identify the property assessed; such as designating the tract or lot by the name by which it is commonly known, or by the number or letter by which it may be usually designated upon the regular assessment rolls, or upon an official or private plan or sketch or by giving the boundaries or the name of the owners upon each side, or by the dimensions or description or name given in the act translating the ownership thereof, or by such other further description as may furnish the means of reasonable identification.
“Section 2. Be if further enacted &c, That for the purposes of taxation and tax sales it shall be sufficient to assess and advertise all property in the name of the person or persons whether dead or alive, who at the time the assessment was made, appeared to be the owners thereof upon the books of the conveyance office, in the parish of Orleans, or of the Recorder’s offices in the other parishes of the State; but ail property may be assessed in the name of the real owner, and if held in trust, in the name of the fiduciary, as such.
“Section 3. Be it further enacted &c, That no assessment or tax sale shall be set aside or annulled for any error in description or measurement of the property assessed, in the name of the owner, provided the property assessed or sold can be reasonably identified.
“Section 4. Be if further enacted &c, That the tax sale shall convey and the purchaser shall take the entirety of the property, neither more nor less, intended to be assessed and sold and such as it was owned by the delinquent tax payer, regardless of any error in the dimensions or description of the property assessed and sold and the tax collector in the advertisement or deed of sale may give the full description according to original titles.
“Section 5. Be it further enacted &c, That this act shall apply to the assessment and tax sale of all property for State, parish and municipal taxes.”
The provisions of Act 140 of 1890 which are pertinent to this issue have been maintained in effect in LSA-R.S. 47:2181 and 2184. See Bennett v. Hernandez, La.App., 128 So.2d 472.
 The applicable law in determining the sufficiency of the description established by the jurisprudence under this statute is well set forth in the case of Knapp v. Jefferson-Plaquemines Drainage District, su-, pra, wherein the Court held:
“In the jurisprudence of this state it is well settled and established that, where a tax sale is made under an assessment in the name of the owner and an error is made in the description of the land intended to be assessed, the tax sale under such assessment is valid if, notwithstanding the error in descrip *693 tion, the land can be reasonably identified by the assessment or description as found in the tax deed, or if the description therein furnishes the means for such identification. Further, if a description of the property intended to be assessed or sold is so indefinite and uncertain as to be defective, resort may be had to evidence outside the assessment roll or tax deed to identify the property, provided such evidence establishes unmistakable the identity of the property.”
Applying the test of the Knapp case to the documents in evidence and the testimony introduced in this case, the Trial Judge in a well reasoned and detailed analysis held as follows:
“Turning first to the proces verbal of the adjudication (Plaintiff Exhibit 4 and L.L. & E-2) we find that the Sheriff purported to adjudicate property to the State under the following description:
“W Van Norden
“292 Acres, Lots 2, 3, and 6, Sec. 33
“W Van Norden
“183 Acres, Lots 4 and 5, Sec 17, Lots 4 and 6 Sec. 21 T.20S. R.22 E.
“The proces verbal refers by necessary implication to the tax rolls for the 'year 1893. We find in evidence, as Exhibit Martin-19, an extract from the 1893 rolls, and we also find in evidence, as Exhibit L.L. & E.-17, a certificate of the Chief Deputy Tax Collector for Lafourche Parish, purporting to show certain properties assessed for the year 1893 to W. Van Norden. The record (p/69) shows that by stipulation of all counsel it was conceded that the properties shown in the certificates were the only properties assessed in the name of W. Van Norden for the year 1893. Examination of these exhibits shows that the only lands assessed to Van Norden 1893 were described as follows:
“3368 Van Norden W. 292.88 (acres) Lots 2, 3, and 6, Section 28 and Lots 2, 3, and 6, Section 33
“3369 Van Norden W. 183.50 (acres) Lots 4 and 5, Section 17 and Lots 4 and 6 Section 21 T 20S-R22E.
“Comparing the description in the proces verbal with the description shown by the tax rolls, it is immediately apparent that when the Sheriff adjudicated property described as:
“ ‘292 acres, Lots 2, 3, and 6, Sec. 33’ he was acting with reference to the same property described under Assessment No. 3368 as:
“ ‘292.88 (acres) Lots 2, 3, and 6, Section 28 and Lots 2, 3, and 6, Section 33.’
“Such conclusion follows from these facts: Two parcels were assessed to Van Norden, and two parcels were adjudicated. The tract which is accurately described under assessment 3369 is likewise accurately described in the proces verbal of the adjudication. The remaining tract, which is described under assessment 3368, is sufficiently identified in the proces verbal to show that the same lands were intended to be conveyed. Thus we are informed, without going beyond the proces verbal and the assessment, first, that the Assessor in 1893 attempted to assess to Van Norden, and that the Sheriff in 1894 attempted to adjudicate to the State, 292 (or 292.88) acres of land, situated in Lafourche Parish, then owned or claimed of record by Van Norden; and second, that such acreage was comprised in certain governmental subdivisions designated as Lots 2, 3, and 6 of Section 28, and Lots 2, 3, and 6 of Section 33, in an unidentified township and range.
“At this point the description is incomplete, and, with nothing to aid it, we might conclude that the adjudication failed for lack of identity of the land. *694 But, adverting to the applicable law, we find that,
‘ * * * no assessment or tax sale ■shall be set aside or annulled for any ■error in description * * * provided the property assessed and sold can '■be reasonably identified.’ (Act 140 of 1890, Sec 3) (Emphasis by the Trial Court)
'“Defendant L. L. & E. offered the testimony of Archie David Saint, attorney-at-law, whose qualifications ‘ * * * as an expert as an attorney and as an abstracter and as one thoroughly familiar with the records of Lafourche Parish * * * ’ were accepted by all parties. Mr. Saint’s testimony was:
“Q: Mr. Saint, were you requested by Louisiana Land & Exploration Company to examine the records in the office of the Clerk of Court for the Parish of Lafourche, Louisiana, to determine what property or properties appeared in the year 1893 in the name of W. Van Norden or Warner Van Nor-den?
“A: I was requested by L. L. & E. to make an examination of the Conveyance Records of La-fourche Parish to determine all of the acquisitions of property in the name of W. Van Norden or under the name of Norden.
“Q: In connection with this request, did you examine the records of the Parish of Lafourche in the office of the Clerk of Court?
“A: I did.
“Q: Would you tell the Court what properties you found in the records of the Clerk of Court of Lafourche Parish in the name of W. Van Norden, or Warner Van Norden?
“A: I gather by that you mean the acquisitions by Norden or Van Norden.
“Q: That is correct.
“A: I examined these records from' the beginning through last week and found two acquisitions of property, both of which' were patents issued by the' State of Louisiana to one W. Van Norden. The first patent is dated November 20, 1871,. and was recorded September 8,. 1874, in Conveyance Book 16> folio 9, bearing Patent Number' 901, by which the State of Louisiana patented to W. Van Norden Lots 4 and 5 of Section' 17 and Lots 4 and 6 of Section 21, in Township 20 South,, Range 22 East in the Parish of Lafourche. The second patent is by the State of Louisiana toi W. Van Norden, bearing date of November 20, 1871, and recorded September 8, 1874, in Conveyance Book 16, folio 10;, bearing Patent Number 902;, whereby the State of Louisiana; patented to W. Van Norden Lots 2, 3, 6, and 7 of Section 28, and Lots 2, 3, and 6 of Section 33, in Township 20 South, Range 22 East. The above two transactions are the only deeds, of record in the Conveyance Books of the Parish of La-fourche where W. Van Norden acquired property.
“Q: Does this testimony apply to the name Norden as well as Van Norden?
“A: It does, and by way of explanation, I mentioned that I examined the indexes of these conveyance records under the surname of W. Van Norden, and also under the surname of Norden. I found that the *695 two patents referred to are indexed under the surname of Norden only, but the entire name of W. Van is given in connection with the surname Norden.
“Q: Do you have in your possession copies of the two patents which you just testified about?
“A: I have certified copies of both patents.
“Q: Mr. Saint, did your examination reveal any property acqui-sitioned in the name of any other Van Norden other than W. Van Norden?
“A: No. This was the only Van Norden that actually acquired property.
"In connection with this testimony, counsel for defendant L. L. & E. offered certified copies of both of the patents referred to.
“In summation, the testimony of this witness, and the documents offered therewith, establish that Van Norden acquired, prior to 1894, and at that date owned, only two parcels of land in La-fourche Parish, namely Lots 4 and 5 of Section 17, and Lots 4 and 6 of Section 21, T 20S, R22E, acquired under Patent No. 901, and Lots 2, 3, 6, and 7 of Section 28, and Lots 2, 3, and 6 of Section 33, T20S, R22E, acquired under Patent No. 902.
“The description of the lands acquired under Patent No. 901 traces inevitably to assessment No. 3369, and the adjudication thereunder, and the description of the lands acquired under Patent No. 902 traces inevitably to Assessment No. 3368, and the adjudication thereunder.
“A description which is incomplete in the assessment and the proces verbal, is made out by reference to the public records, as the law clearly recognizes that it may be; (Egle v. Constantin, 198 La. 899, 5 So.2d 281; Pierson v. Castell Land & Harbor Co., 159 La. 158, 105 So. 274; Tillery v. Fuller, 190 La. 586, 182 So. 683; Gayle v. Slicer, 188 La. 940, 178 So. 498; Knapp v. Jefferson-Plaquemines Drainage Dist., 224 La. 105, 68 So.2d 774; Bennett v. Hernandez [La.App.], 128 So.2d472) and from comparison of the assessment and the proces verbal of adjudication with the public records, there is no duobt that in the performance of their official duties, the minds of the Assessor and the Tax Collector were brought to consideration of the lands which were owned by Van Norden. (Landry v. McWilliams, 135 La. 655, 65 So. 875). This being so, we must hold that the 1894 adjudication was effective, and we must recognize that the title of Van Norden was divested.”
This Court has made an examination of the entire record of this case and finds that the analysis made by the Trial Judge, not only as to the rule of law or jurisprudence to be applied, but also the application of the extrinsic evidence and the testimony to the jurisprudence, is sound and correct.
The basic issues involved in cases such as these are whether or not an interested person can reasonably identify the property which was intended to be the subject of the sale. The Court, acting under the authority of Section 3 of Act 140 of 1890, to the effect that no assessment or tax sale shall be set aside or annulled for any error in description, provided the property assessed and sold can be reasonably identified, and also under the authority of the jurisprudence as announced in the Knapp case which permits identification of the property to be made by resort to extrinsic evidence outside of the assessment roll or tax deed, provided such evidence establishes unmistakably the identity of the property, concluded that the extrinsic evidence which was introduced at the trial, together with the testimony introduced at the trial, all of *696 which is discussed in the above quoted reasons for judgment, sufficiently identified the property. With that finding this Court is in agreement.
The plaintiffs, in their brief, cite many cases wherein they contend that the factual situations involved in those cases apply to the case at issue and further attempt to distinguish the cases cited by the Trial Judge from the case at issue. Without going into this matter in any detail, it should be pointed out that what is involved herein is not whether or not certain factual situations set forth in other cases are similar to- the case at issue, but whether the property can be sufficiently identified.
The plaintiffs contend the District Court erred in failing to recognize that Warner Van Norden owned other property in the Parish, even in the same Township, and, in fact, owned land in four separate Sections in the same Township, and because of this fact, the cases cited by the District Judge are not applicable, for in those cases the party in whose name the property was assessed owned no other property in the Township Section, or subdivision, thereby making the property easily identifiable. The answer to this is twofold. As the Trial Judge aptly stated in his reasons for judgment, the question is one of identification and is not to be determined by whether the tax debtor owned other property, but whether such extrinsic evidence confirms the identification of the property sold for taxes. Considering the facts presented here, the Trial Judge concluded the identification was made certain. In addition, it should be pointed out that all of the property owned by the tax debtor was adjudicated to the State at the time of the 1894 adjudication and not merely the property at issue herein. If the property in Sections 17 and 21 had not been sold, there might have been some merit to defendants’ argument, but, as an examination of the record shows all property patented by and assessed to Warner Van Norden was sold to the State for taxes in 1894. He had two patents, No. 901 and No. 902. The 1893 assessment showed two' assessments which covered the patents and the 1894 adjudication also showed two tracts which covered two assessments and the same two patents. Therefore, we do not have the question as to whether or not a person interested in the property would be confronted with a determination as to what portion of the tax debtor’s property had actually been adjudicated and which portion had not been adjudicated.
For the foregoing reasons the judgment of the Lower Court is hereby affirmed.
Affirmed.